No. 89,511

STATE OF KANSAS, *Appellee*, v. EDWARD B. MARTIN, *Appellant*.

112 P.3d 192

Opinion filed June 3, 2005.

*Stephen B. Chapman*, of Chapman & White, LLC, of Olathe, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Edward Martin was convicted by a jury of one count of conspiracy to commit identity theft and four counts of identity theft. The trial court sentenced Martin to consecutive terms for a controlling term of 34 months' imprisonment. The presumption of probation was denied and an upward dispositional departure to prison on each count was imposed on the ground that Martin was leader of the ring of identity thefts. Martin appealed his sentence to the Court of Appeals. The Court of Appeals' majority approved the departures but vacated the sentences and remanded for resentencing because the trial court failed to consider placing Martin at Labette Correctional Conservation Camp, as required by K.S.A. 2003 Supp. 21-4603d(g). See *State v. Martin*, 32 Kan. App. 2d 642, 87 P.3d 337 (2004). We granted Martin's petition for review of the Court of Appeals' decision on the dispositional departure in sentencing. Hence, the single issue before the

court is whether Martin's role as "boss," "kingpin," or "ringleader" is a valid upward dispositional departure factor.

Prior to trial, the State filed a motion for an upward dispositional departure sentence, requesting that the jury make a special finding whether Martin was the leader of the identity theft ring. At trial, the State presented evidence that Martin orchestrated a large, interstate identity theft ring, which began in California and then moved to Kansas. The State's evidence was that Martin obtained several individuals' identification information and used the information to supply his accomplices with fake IDs. The accomplices would use the IDs to write checks for merchandise at retail stores, then return the merchandise for cash and give the cash to Martin. The accomplices also used the fake IDs to obtain credit at various retail stores. Martin directed his accomplices' credit purchases, and most of the merchandise was given to Martin.

The jury convicted Martin of one count of conspiracy to commit identity theft and four counts of identity theft. The jury also completed a special interrogatory verdict form stating that the jury found beyond a reasonable doubt that Martin acted as the organizing force and directed the criminal activities of three named accomplices.

At sentencing, the trial judge stated that he was departing from the presumptive probation sentences because Martin was the mastermind, and but for Martin's leadership the crimes would not have taken place, and so this was an egregious case.

In the Court of Appeals, Martin argued that the record does not support the trial court's finding that but for his leadership the crimes would not have taken place. K.S.A. 21-4721(d) states that, when a departure sentence is appealed, the appellate court shall determine whether the sentencing court's findings of fact and reasons justifying a departure are supported by the evidence and constitute substantial and compelling reasons for departure.

With regard to the trial court's findings of fact, the Court of Appeals stated:

"Martin challenges the trial court's specific finding but ignores its general finding that Martin was the ringleader, *i.e.,* the 'originating, motivating, and supervising force behind this conspiracy.' The trial court made it clear that it found Martin

to be the ringleader or kingpin of the conspiracy and it was using Martin's role as the ringleader to depart. The record on appeal contains substantial competent evidence supporting a finding that Martin acted as the ringleader or kingpin of the conspiracy." 32 Kan. App. 2d at 644.

In his petition for review, Martin reiterates his contention that the trial court's finding that but for his leadership the crimes would not have taken place is not supported by the evidence. He attempts to show the lack of substantial supporting evidence by directing the court's attention to the activities of other conspirators. As the Court of Appeals stated, the trial court's remark that the crimes would not have taken place without Martin's leadership was not a separate finding but an expression of the importance of Martin's leadership to the criminal enterprise. Moreover, the contention misframes the issue, which is not whether his coconspirators were integral to the crimes, but rather whether Martin was the leader of the crime ring. There is substantial competent evidence showing that he was, including that Martin provided the fake ID's, told the others where to go, directed their purchases, and collected money and merchandise from them.

In the Court of Appeals, Martin also argued that because his ringleader status was an element of the conspiracy offense, it could not be used as a departure factor. See K.S.A. 2003 Supp. 21-4716(c)(3). The Court of Appeals was unconvinced because the State was not required to prove that Martin was the ringleader of the criminal enterprise in order to prove the conspiracy, even though some of the aspects of the overt acts committed in furtherance of the conspiracy would have supported a finding that Martin was the ringleader. 32 Kan. App. 2d at 646.

The statutory elements of conspiracy are an agreement with another person to commit a crime or to assist in committing a crime, and an overt act in furtherance of the conspiracy. K.S.A. 21-3302(a). The State was not required to prove Martin's status among the conspirators in order to prove conspiracy. The Court of Appeals correctly rejected the argument.

In the Court of Appeals, Martin's third argument was that the trial court's reason for imposing a dispositional departure was not substantial and compelling. An appellate court reviews the question

whether the departure factors are substantial and compelling as a question of law. *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001). Defendant's status as kingpin of a crime ring is not included in the nonexclusive list of aggravating factors in K.S.A. 2003 Supp. 21-4716(c)(2). When the trial court does not rely upon statutory aggravating factors in imposing a departure sentence, the appellate court views the decision to depart with stricter scrutiny. *State v. Murphy*, 270 Kan. 804, 807, 19 P.3d 80 (2001).

On this issue, which is one of first impression for Kansas appellate courts, the Court of Appeals discussed *State v. Adames*, 631 So. 2d 98 (La. App. 1994), and *Fletcher v. State*, 508 So. 2d 506 (Fla. Dist. App. 1987), as supporting Martin's sentencing departure. In *Adames*, the defendant pled guilty to one count of conspiracy to distribute marijuana. On appeal, the defendant challenged the trial court's upward departure. The Louisiana Court of Appeals concluded that the defendant's role as the ringleader was not an element of the conspiracy and could be considered a proper aggravating factor for an upward departure. 631 So. 2d at 101-02. In *Fletcher*, the defendant was convicted of trafficking in and conspiracy to traffic in marijuana. The trial court upwardly departed from the guidelines sentence, in part because defendant was the ringleader. The District Court of Appeal of Florida affirmed, concluding that that state's guidelines did not preclude basing an upward departure on defendant's ringleader status and, as a matter of common sense, the mastermind deserves a greater sentence than his lackeys. 508 So. 2d at 507.

The Court of Appeals also found support for the upward departure in the Kansas statutory scheme. Noting that K.S.A. 2003 Supp. 21-4716(c)(2) does not include an aggravating factor relating to a defendant's role as a ringleader but that 21-4716(c)(1)(B) identifies the defendant's playing a minor or passive role in the crime as a mitigating factor, the Court of Appeals concluded that the latter subsection could be interpreted as supporting greater punishment for the leader of a criminal enterprise. 32 Kan. App. 2d at 644-46.

The dissenting judge reasoned as follows:

"Apparently, the premise underlying the State's argument is that codefendants should receive disparate punishment for committing the same crime based upon

their respective roles in the criminal enterprise. The State contends that the defendant who conceives, plans, and directs a criminal activity is more culpable than the persons who execute the plan and actually commit the crime. This argument suggests that an aider and abettor should be more harshly punished than the principal actor.

"As the majority notes, the legislature specifically provided a means for the sentencing court to mete out different sentences to codefendants based upon relative culpability. Under K.S.A. 2003 Supp. 21-4716(c)(1), the district court is permitted to downwardly depart based upon the mitigating factor that the offender had a minor or passive role in the crime. Unlike the majority, I do not read the specific inclusion of the mitigating factor as supporting an argument that we should further widen the disparity in sentencing between codefendants committing the same crime by also permitting an upward departure for the 'leader and organizer' of the criminal enterprise. To the contrary, the fact that the legislature considered the concept of relative culpability and chose to include that reason in the mitigating factors, but not in the aggravating factors, cuts against the proposed creation of a 'ringleader' upward departure. *Cf. State v. Favela*, 259 Kan. 215, 234-35, 911 P.2d 792 (1996) (the doctrine of *expressio unius est exclusio alterius* applied to conclude the legislature must not have intended for the defendant's young age to be a mitigating factor when the victim's young age is an enumerated aggravating factor).

"Obviously, Martin's enlistment of foot soldiers to effect his criminal scheme has subjected him to prosecution, as an aider and abettor, for each and every criminal act committed by his 'gang.' However, with respect to each charge, I do not believe that Martin's role as the leader, rather than the actor, constitutes a valid departure factor. The legislature is charged with the responsibility and invested with the sole authority to establish the punishment for acts it defines as criminal. A policy decision to impose harsher punishment upon the 'brains' or 'leader' of a group of criminals, based solely upon the leader's administrative role in the particular crime, should emanate from the legislature, not the judiciary. I would reverse and remand for imposition of the presumptive sentences." 32 Kan. App. 2d at 647-48 (Johnson, J., dissenting).

As the dissenting judge points out, the majority's statutory construction breaks with convention. Considering in *State v. Favela*, 259 Kan. 215, 235, 911 P.2d 792 (1996), whether the defendant's young age justified a downward departure, the court stated:

"K.S.A. 1994 Supp. 21-4716(b)(2)(A) specifically lists the victim's young age as an aggravating factor but 21-4716(b)(1) says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive, the doctrine of *expressio unius est exclusio alterius* applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor. The fact the defendant was only 17 years old at the time of the

offense is not a substantial and compelling reason justifying departure as a matter of law, but it may be considered as part of the entire package."

In the circumstances of the present case, the same reasoning applies. K.S.A. 2003 Supp. 21-4716(c)(1)(B) specifically lists the defendant's playing a minor or passive role in the crime as a mitigating factor, but 21-4716(c)(2) says nothing about the defendant's ringleader status being an aggravating factor. Because the legislature expressly identified a minor or passive role as a mitigating factor does not mean, as the Court of Appeals' majority would have it, that it follows that the ringleader role, although unmentioned, is an aggravating factor. On the contrary, the legislature's expressing the one and failing to express the other is correctly construed as an indication that the legislature did not intend the other.

In the circumstances of this case, the legislature's silence on kingpin status is legally significant because it contrasts with the legislature's expression on a minor role. In other circumstances where the *Favela* reasoning did not apply, it would be overly broad to say that the legislature's silence on a proposed factor meant that it could not be a valid departure factor. The expressly nonexclusive nature of the statutory list indicates that the legislature intended there to be valid unlisted factors. Valid unlisted factors, however, according to this court's reasoning in *Favela*, do not have counterparts included in a statutory list.

In *Fletcher*, the Florida court's perception of what is commonsensical, which appealed to the Court of Appeals' majority, is not persuasive in light of the Kansas statutory scheme and the reasoning of *Favela*. And, as the dissenting judge noted, any policy decision to impose harsher punishment on the leader of a criminal enterprise should come from the legislature. We conclude that Martin's ringleader status does not support an upward dispositional departure.

The decision of the district court to impose an upward dispositional departure sentence on Martin and the decision of the Court of Appeals affirming the district court are reversed, Martin's upward dispositional departure sentence is vacated, and the matter is remanded for resentencing in accord with this opinion.

McFARLAND, C.J., concurring in part and dissenting in part: I concur with that portion of the majority opinion which holds that Martin's "ringleader" status was not an element of the conspiracy offense. I respectfully dissent from the balance of the opinion which holds that Martin's "ringleader" status does not support an upward dispositional departure.

I believe the majority's characterization of Martin as the "ringleader" trivializes his role in the criminal enterprise he organized and controlled, and that the usage of the term leads the majority to reach an incorrect result.

Neither the jury's special verdict nor the district court's stated basis for granting an upward dispositional departure contain the word "ringleader." In the special verdict form, the jury answered yes to the question asking whether it could

"find beyond a reasonable doubt that in connection with the offense(s) for which the defendant was convicted that the defendant acted as the organizing force and directed the criminal activities of the [three] accomplices involved in this case."

In pronouncing sentence, the district court stated:

"The Court has before it the State's Motion for Dispositional Departure. Defendant is, indeed, in presumptive probation category. The State requests he serve his sentence in Department of Corrections. Having heard the evidence in the case, the Court is of the opinion—first off, I agree with the jury's special verdict returned. It's not clear whether such a procedure is required in order to grant a—give the Court the option of granting a motion for dispositional departure. But in any event, the Court, after hearing the evidence of trial, is of the opinion that but for Mr. Martin's talents in organizing, controlling, supervising this criminal conspiracy, that it would have never taken place. I cannot say that for the other minor participants in the conspiracy. Any one of those who had dropped out, not been involved, decided not to become involved would not have kept the conspiracy in the crimes from taking place, but Mr. Martin had that unique position of being the originating, motivating, and supervising force behind this conspiracy. Counsel is correct. There is no decisional law in this jurisdiction where the kingpin factor is in fact, recognized as a basis for departure, although the Kansas Sentencing Guidelines list of factors that may give rise to departure is nonexclusive. I understand well the argument by [defense counsel] that basis for the departure is simply rehashing elements of the crime of conspiracy to commit identity theft. In part, that's correct, but the Court then would have to ignore the importance that Mr. Martin brought to this organization. As I say, but for his involvement in this organization, this organization would never have taken place. I think were that—call it kingpin, call it whatever you want, the mastermind Mr. Martin was

there, and but for him, these crimes would not have taken place. I think the law should recognize that this therefore is an egregious case. It does cry out for additional consideration. So it is the Court's opinion that there is a substantial, compelling reason that's been presented by the State in its motion to grant a dispositional departure, and Mr. Martin therefore, you will be denied probation, ordered to serve your sentence at Department of Corrections."

Abundant evidence was presented that Martin organized and ran the highly sophisticated multistate identity theft criminal enterprise herein. He controlled every aspect of the business, including selecting the persons whose identities were to be stolen, obtaining the personal data required for the identity theft, creating the high quality fake identification documents necessary to profit from the stolen identities, determining in what cities the fake identification would be used, directing exactly where and what merchandise would be obtained, and the receiving and disposing of the goods obtained. He recruited individuals to carry out his instructions, the individuals being paid on a commission basis. Every aspect of the operation was under Martin's control—even down to what hotels his workers would use and what rental cars would be obtained.

The term "ringleader" is inappropriate to describe Martin's role in the criminal business he ran. The teenage boy who suggests spray painting graffiti on the walls of the school he and his friends attend and supplies the paint for the joint undertaking can be characterized as the ringleader. The individual who convinces two individuals to join him in robbing a convenience store can be said to be the ringleader. The term is inaccurate when characterizing individuals who are, in essence, CEO's of multistate sophisticated criminal enterprises and organizations requiring highly specialized skills and organizational abilities in order to succeed.

Fortunately, it is rare for such CEO's to be prosecuted in the state courts of Kansas. They are not often arrested in Kansas and, if caught in the state, would most likely be tried in the federal courts. The federal court system frequently deals with sophisticated multistate criminal enterprises. This is why the Federal Sentencing Guidelines contain an elaborate formula for sentencing based on relative responsibility. I recognize that in *United States v. Booker*, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005),

the application of the Guidelines was significantly altered on the grounds that judges, not juries, made the findings supporting upward departure. As a result, a finding based on mere preponderance of the evidence could result in a more severe sentence being imposed. The rationale is similar to that employed in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

However, the Federal Sentencing Guidelines for determining a sentence based on relative responsibility are still instructive. The federal courts are permitted to increase the offense level by varying degrees as follows:

4 levels: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

3 levels: "If the defendant was a manager or a supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."

2 levels: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity not described above [*i.e.*, less than 4 participants, not extensive]." U. S. S. G. § 3B1.1 (2004).

No adjustment if defendant merely suggests committing the crime.

Application Note 4 to these Guidelines is quite interesting when viewed in the context of the case before us. When distinguishing between a leadership or organizational role (most severe) versus a management or supervisor role (less severe), the factors a court should consider *include*:

(1) the exercise of decision making authority;

(2) the nature of participation in the commission of the offense;

(3) the recruitment of accomplices;

(4) the claimed right to a larger share of the fruits of a crime;

(5) the degree of participation in planning or organizing the offense;

(6) the nature and scope of the illegal activity; and

(7) and the degree of control and authority exercised over others.

Again, the Application Notes indicate that titles (kingpin, boss, mastermind, ringleader) are not controlling. They further indicate that more than one person can qualify as a leader or organizer of a criminal association or conspiracy.

I also conclude that the majority's reliance on *State v. Favela*, 259 Kan. 215, 911 P.2d 792 (1996), is misplaced. Favela was convicted of attempted second-degree murder and received a downward departure sentence from which the State appealed. The *Favela* opinion is lengthy and covers a variety of issues. The portion the majority deems relevant herein is quite brief and states, in its entirety:

### "AGE 17

"The State contends that the fact the defendant was only 17 when he committed the crime is not a substantial and compelling reason justifying departure because the defendant was adjudicated to stand trial as an adult on the charge of attempted murder. Further, in an apparent attempt to show the defendant was a dangerous 17-year-old, the State pointed to the testimony of a police officer who participated in the stand-off which it presented at the sentencing hearing. The officer testified that the defendant goes by the street name of Lunatic and the officer thinks the defendant is in a gang.

"K.S.A. 1994 Supp. 21-4716(b)(2)(A) specifically lists the victim's young age as an aggravating factor but 21-4716(b)(1) says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive, the doctrine of *expressio unius est exclusio alterius* applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor. The fact the defendant was only 17 years old at the time of the offense is not a substantial and compelling reason justifying departure as a matter of law, but it may be considered as part of the entire package." 259 Kan. at 234-35.

This portion of *Favela* is dealing only with the age of the defendant as being a mitigating factor, just as the young age of a victim may be an aggravating factor. Age of the defendant is a status factor and has nothing to do with involvement or degree of participation in the crime. The majority uses the reasoning in *Favela* to buttress its conclusion that by identifying a defendant's minor or passive role in the crime as a mitigating factor (K.S.A. 2004 Supp. 21-4716[c][1][B]) and not specifically including a ringleader role in the criminal enterprise as constituting an aggravating factor (K.S.A. 2004 Supp. 21-4716[c][2]), the legislature did not intend

to authorize an upward departure based on greater culpability due to a defendant's leadership in the criminal enterprise.

I disagree. The basic premise is that all participants are considered equal for sentencing based on crime committed and respective criminal histories. By statute, a minor or passive role can be the basis for a downward departure. Obviously, an upward departure based on just some minor increased participation is inappropriate—hence, the federal court's various levels of participation.

The Kansas Sentencing Guidelines enumerate various aggravating factors but preface the list with the statement that the list is nonexclusive "in determining whether substantial and compelling reasons for a departure exist." K.S.A. 2004 Supp. 21-4716(c). The district court found in a special jury verdict that Martin's participation was essentially the originating, motivating, and supervising force behind the conspiracy. The court held this to be an egregious case whose facts constitute a substantial compelling reason to grant an upward departure. I agree. Under the majority's analysis, in the Prohibition days in Chicago, Al Capone and his truck drivers transporting his illegal alcohol are equally culpable and should receive the same sentence. As the truck drivers carry out their criminal acts in public, they could easily have more serious criminal histories than the leader of the criminal enterprise whose involvement is shielded from public view. Thus, Capone could end up with the shortest sentence. The upward departure sentence imposed on Martin herein was appropriate under Kansas law. I would affirm the district court and the Court of Appeals on this issue.

DAVIS, J., joins in the foregoing concurring and dissenting opinion.