No. 95,819

STATE OF KANSAS, *Appellee*, v. TINA M. MARTIN, *Appellant*.

(175 P.3d 832)

Opinion filed February 1, 2008.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristi L. Barton,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: In this case we must decide whether a district court's reasons for its upward dispositional departure from a presumptive sentence of probation were "substantial and compelling" as required by K.S.A. 2005 Supp. 21-4716(a). The Court of Appeals held that the reasons, which were not listed as aggravating factors in that statute, were not valid departure factors. It vacated the prison sentences and remanded to the district court for resentencing Martin. *State v. Martin,* No. 95,819, an unpublished opinion filed January 26, 2007. We granted the State's petition for review; our jurisdiction is under K.S.A. 20-3018(b).

The sole issue on appeal is whether the district court's reasons, despite not being listed in K.S.A. 2005 Supp. 21-4716, are nevertheless substantial and compelling as required by that statute. We hold that they are. Consequently, we affirm the district court and reverse the Court of Appeals.

## FACTS

The essential facts are not in dispute. On July 10, 2005, Tina M. Martin had an argument with an acquaintance. Later that night, she drove her 16-year-old son to the acquaintance's house. While driving by, she turned off her car headlights, gave her son a handgun, and ordered him to "do it, do it!" Martin's son then fired four shots at the house. Four people were in the house at the time: two adults, a teenager, and an infant. No one was injured.

Martin was arrested and charged with 2 counts. Count 1 alleged that she committed the offense of criminal discharge of a firearm at an occupied dwelling, *i.e.*, she "did . . . unlawfully, maliciously, intentionally and without authority discharge a firearm . . . at a dwelling . . . occupied at the time by a human being" in violation of K.S.A. 2005 Supp. 21-4219(b).

Count 2 alleged that Martin committed the offense of contributing to a child's misconduct, *i.e.*, she "did . . . unlawfully, intentionally cause or encourage a child . . . to commit an act which if committed by an adult would be a felony, to wit: Criminal Discharge at Occupied Dwelling," in violation of K.S.A. 2005 Supp. 21-3612(a)(5). Both charged offenses are severity level 7 person felonies.

After Martin pled guilty, the district court found a factual basis for her pleas and accepted them.

Based upon the presentence investigation report showing that Martin had a history of several offenses and a criminal history score of E, presumptive probation was indicated for both charges. However, because of the application of the "special rule" due to the use of a firearm by Martin's son, the codefendant, a presumption of imprisonment arose for Count 1.

Martin moved for a downward dispositional departure from the prison sanction. The court sustained that motion, stating: "The fact that a co-defendant used a firearm to commit the crime this defendant aided and abetted was not considered in imposing the dispositional departure sentence."

The State then moved for an upward dispositional departure from presumptive probation. The court sustained the State's motion, stating two reasons for its departure:

1. "Defendant occupies a special fiduciary relationship with her 16-year-old son, the shooter in a drive-by shooting whom she encouraged to 'do it, do it!'; and, thus, violated the special fiduciary relationship and the unique position of trust she occupies as a mother."
2. "Further, encouraging a drive-by shooting demonstrates a callous, but yet a cowardly disregard for human life."

The court then imposed concurrent sentences of imprisonment for 23 months and 13 months respectively, both within the aggravated sentencing range for each of the two crimes.

The Court of Appeals vacated the sentence and remanded to the district court with instructions to resentence Martin in accordance with directions in its opinion. Slip op. at 8. Among other things, it specifically concluded that "[t]he district court's determination that a fiduciary relationship existed between Martin and her codefendant son was not an appropriate factor to use to depart from the presumption of probation." Slip op. at 6. It also concluded "that K.S.A. 2005 Supp. 21-4716(c)(3) applies and bars the use of the district court's 'callous and cowardly disregard for human life' factor because every drive-by shooting necessarily involves this actual disregard for human life." Slip op. at 7-8.

Additional facts will be provided as necessary to the analysis.

## ANALYSIS

Issue: *The Court of Appeals erred when it concluded that the departure factors were invalid.*

Martin primarily argues that the Court of Appeals correctly held that the district court's departure reasons are barred by the "statutory counterpart" rule first applied in *State v. Favela,* 259 Kan. 215, 911 P.2d 792 (1996), and later labeled in *State v. Martin,* 279 Kan. 623, 112 P.3d 192 (2005). The State essentially argues that the statutory counterpart rule is bad law and should be discarded, but, if not, it certainly has no application to these facts.

A short review is in order. The sentencing of a criminal defendant is strictly controlled by statute in Kansas. *State v. Anthony,* 274 Kan. 998, 999, 58 P.3d 742 (2002). The legislature has expressly granted sentencing judges the authority to depart from statutorily established presumptive sentences or dispositions provided certain

procedures are followed. K.S.A. 2005 Supp. 21-4716(a) identifies this authority and provides in relevant part:

"[T]he sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines . . . , *unless the judge finds substantial and compelling reasons to impose a departure.* If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." (Emphasis added.)

The parameters for appellate review of a sentencing court's dispositional departure are set by K.S.A. 21-4721(d). Consistent with the sentencing court's obligation under 21-4716(a), it provides:

"In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the *sentencing court's findings of fact and reasons justifying a departure:*
"(1) Are supported by the evidence in the record; and
"(2) *constitute substantial and compelling reasons for departure."* (Emphasis added.) K.S.A. 21-4721(d).

There is no dispute in the instant case about whether the evidence in the record supports the reasons given by the sentencing court for the departure. Rather, the dispute is whether these reasons are substantial and compelling for departure. Analysis of the present dispute consists of two parts: First, are the reasons given by the sentencing court valid departure factors and, second, "are the reasons, as a whole, substantial and compelling reasons for departure in a given case?" *State v. McKay,* 271 Kan. 725, 729, 26 P.3d 58 (2001). This determination is a matter of law which we review de novo. 271 Kan. at 728.

*Valid departure factors*

K.S.A. 2005 Supp. 21-4716(c)(1) and (2) list a number of legislatively established factors for both sentence mitigation and aggravation, respectively, which "may be considered in determining whether substantial and compelling reasons for a departure exist." Subparagraphs (c)(1) and (c)(2) also make clear that both lists represent "nonexclusive . . . factors." Accordingly, while the district court's two departure factors here are not statutorily listed, they may still help constitute—together or singly—substantial and com-

pelling reasons. See, *e.g.*, *McKay*, 271 Kan. 725 (absconding was a valid departure factor, although not statutorily listed).

We first examine the "special fiduciary relationship and unique position of trust" reason. This examination requires review of the statutory counterpart rule.

The case of *Favela*, 259 Kan. 215, supplies some explanation of the rule. There, the 17-year-old defendant argued that his young age should be a mitigating factor justifying a downward departure in his sentence. He reasoned that although a defendant's young age was not statutorily listed as a mitigator, it should qualify because the statute did list as an *aggravator* the *victim's* young age. This court disagreed, applying the doctrine of *expressio unius est exclusio alterius*, and stated as follows:

"[The statute] specifically lists the victim's young age as an aggravating factor but [the statute] says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive [under the statute], the doctrine of '*expressio unius est exclusio alterius*' applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor. The fact the defendant was only 17 years old at the time of the offense is not a substantial and compelling reason justifying departure as a matter of law." 259 Kan. at 235.

Nine years after *Favela* this court considered a related argument in *State v. Martin*, 279 Kan. 623. Whereas in *Favela* the defendant had argued that the existence of a particular statutory aggravator supported use of a related nonstatutory mitigator, in *Martin* the State argued that the existence of a particular statutory mitigator supported use of a related nonstatutory aggravator. Specifically, the State reasoned that because K.S.A. 21-4716(c)(1)(B) listed the defendant's minor or passive role as a mitigator, then his major role as the ringleader or kingpin should qualify as an aggravator justifying an upward departure in his sentence. Citing the same language from *Favela* quoted earlier in this opinion, a majority of the *Martin* court disagreed:

"In the circumstances of the present case, the same reasoning [as *Favela*] applies. K.S.A. 2003 Supp. 21-4716(c)(1)(B) specifically lists the defendant's playing a minor or passive role in the crime as a mitigating factor, but 21-4716(c)(2) says nothing about the defendant's ringleader status being an aggravating factor. Because the legislature expressly identified a minor or passive role as a mitigating

factor does not mean, as the Court of Appeals' majority would have it, that it follows that the ringleader role, although unmentioned, is an aggravating factor. On the contrary, *the legislature's expressing the one and failing to express the other is correctly construed as an indication that the legislature did not intend the other.*" (Emphasis added.) 279 Kan. at 628.

The *Martin* court recognized that the expressly nonexclusive nature of the statutory list suggests a legislative intent to acknowledge the existence of valid unlisted factors. Despite that recognition, it then concluded: "Valid unlisted factors, however, according to this court's reasoning in *Favela, do not have counterparts included in a statutory list.*" (Emphasis added.) 279 Kan. at 628.

Here, citing *Favela* and *Martin,* the Court of Appeals applied its understanding of the statutory counterpart rule. Its application barred the district court's use of an unlisted aggravator, a special fiduciary relationship and unique position of trust between the defendant and her *codefendant* son, because of the existence of a purported statutory aggravator counterpart: "a fiduciary relationship which existed between the defendant and *victim.*" (Emphasis added.) K.S.A. 2005 Supp. 21-4716(c)(2)(D).

The State first generally argues, with some validity, that the doctrine of *expressio unius est exclusio alterius* has no application to statutory lists which the legislature has clearly labeled as "nonexclusive." It points out that in *State v. Gunby,* 282 Kan. 39, 52-53, 144 P.3d 647 (2006), we ruled that analogous language in K.S.A. 60-455 ("evidence is admissible when relevant to prove *some other material fact including* motive, opportunity, intent . . . ") was exemplary—not exclusive, as this court had previously interpreted the language. In overruling our precedents, we held that the eight material facts set forth in the statute are *"among* the possibilities, not the *only* possibilities" and "starting points for analysis rather than ending points." 282 Kan. at 53. In other words, the State argues that the statutory counterpart rule in *Favela* and *Martin* is as wrong as the precedents overruled in *Gunby.*

In the alternative, the State argues that even if the statutory counterpart rule is valid, it has no application to our facts. It correctly points out that the defendant in *Favela* used a statutory aggravator to attempt use of an unlisted mitigator, and that the State

in *Martin* used a statutory mitigator to attempt use of an unlisted aggravator. It emphasizes that by contrast, the Court of Appeals applied the rule to mean a statutorily listed aggravator barred use of a related but unlisted aggravator. We agree with the State that this interpretation is an expansion of the counterpart rule expressed and applied in *Favela* and *Martin* and represents an improper application. Because we agree with the State's narrowly drawn alternate argument, we need not address the broader question of the continued efficacy of *Favela* and its progeny.

The Court of Appeals' interpretation of the counterpart rule suggests that any time a particular concept is listed in the statute as an aggravator, no variation on that theme could serve as any basis for an aggravator. Similarly, any time a particular concept is listed in the statute as a mitigator, no variation on that theme could serve as any basis for a mitigator. This interpretation moves away from the legislature's pronouncement that its statutory lists of aggravators and mitigators are nonexclusive and moves closer to making them exclusive. In short, because the sentencing court's aggravating factor for downward departure does not have a counterpart in the opposite statutory mitigating factor list, the counterpart rule does not bar it as a valid unlisted factor for departure.

In addition to using the counterpart rule to bar the use of the special fiduciary relationship between codefendants mother and son as a valid departure factor, the Court of Appeals noted that

"Martin was also convicted of contributing to a child's misconduct or deprivation in violation of K.S.A. 2005 Supp. 21-3612(a)(5) for 'causing or encouraging a child under 18 years of age to commit an act which, if committed by an adult, would be a felony.' This separate conviction further mitigates the usage of either factor [*e.g.*, special fiduciary relationship] utilized by the court in sentencing Martin to prison." *Martin*, slip op. at 8.

We disagree. Martin's violation of the special fiduciary relationship and unique position of trust she occupied, as a mother, was a different, more serious type of conduct than that required by K.S.A. 2005 Supp. 21-3612(a)(5). That statute requires no fiduciary relationship out of which the "causing or encouraging" of a child arises, much less a parent-child relationship, as here.

Finally, we also observe that the federal courts have often used upward departures based upon defendant parents' violating their positions of trust to influence their children to carry out criminal acts. In *United States v. Salcido-Corrales*, 249 F.3d 1151, 1155 (9th Cir. 2001), the Ninth Circuit Court of Appeals affirmed the sentencing court's use of an upward departure based upon the defendant's involvement of his son in his crimes, stating:

"Other circuits have affirmed upward departures based on defendants' involvement of their children or other relatives in the commission of crime. [Citations omitted.] *A parent occupies a position of trust with respect to a child and will have, in many cases, substantial influence over the child's decisions.* We do not find it improper for a district court to find particularly blameworthy the fact that a parent has brought his child into a criminal enterprise, and to rely on that fact as a basis for an upward departure." (Emphasis added.)

See also *United States v. Ledesma*, 979 F.2d 816, 822 (11th Cir. 1992) (Upward sentence departure for mother who had involved her young adult daughter in the conspiracy to manufacture and distribute cocaine base. "There is ample precedent for departing upward based on a defendant parent's influencing his or her children to join in criminal activity."); *United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir. 1992), *cert. denied*, 508 U.S. 952 (1993) (departure upheld where defendant's nephew, while "perhaps not a 'vulnerable victim' . . . nonetheless was dragged into the conspiracy by his uncle in part because of the familial relationship"); *United States v. Porter*, 924 F.2d 395, 399 (1st Cir. 1991) (Upward sentence departure for father who "had urged his son to rob another bank to obtain money for his [father's] bail."); *United States v. Christopher*, 923 F.2d 1545, 1556 (11th Cir. 1991) (Upward sentence departure due to defendant's "willingness to corrupt members of his own family, including his own children, by involving them in criminal activities."); *United States v. Shuman*, 902 F.2d 873, 876 (11th Cir. 1990) (Upward sentence departure for mother's "willful incorporation of her son into the drug-trafficking business.").

*Substantial and compelling reasons in this case*

Now that we have determined that the special fiduciary relationship reason given by the sentencing court was a valid departure factor, we proceed to the second part of our analysis, *i.e.*, whether the reasons, as a whole, are substantial and compelling reasons in this particular case. *McKay*, 271 Kan. at 729. In *McKay*, this court acknowledged:

" 'Reasons which may in one case justify departure may not in all cases justify a departure.' [*State v. Grady*], 258 Kan. at 83 [, 900 P.2d 227 (1995)]. Rather, we must evaluate the offense of conviction, the defendant's criminal history, and the departure reason stated, as well as the purposes and principles of the Kansas Sentencing Guidelines. *State v. Tiffany*, 267 Kan. 495, 504-05, 986 P.2d 1064 (1999); *Grady*, 258 Kan. at 83." 271 Kan. at 730.

Indeed, in *McKay*, although the court found that absconding is a valid departure factor, it held under the totality of the circumstances that the defendant's absconding for 2 months did not constitute a substantial and compelling reason to depart from the presumptive sentence. 271 Kan. at 731. *Cf. United States v. Monaco*, 23 F.3d 793, 800 (3d Cir. 1994) ("In sum, we will not say that bringing a child into a criminal scheme is always an aggravating circumstance, especially when the defendant did not understand that what he or she was asking the child to do violated the law. The evaluation is too bound up in the facts and circumstances of each case.")

The *McKay* court provided some additional guidance by defining "substantial" and "compelling":

"The term 'substantial' refers to something that is real, not imagined; something with substance and not ephemeral. The term 'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. [Citation omitted.]" 271 Kan. at 728.

The State argues that the facts of this case justify Martin's dispositional departure sentence, *i.e.*, that they "leave the status quo" and "go beyond what is ordinary." It notes that someone could have been easily injured or killed when Martin's son fired four shots into the home at her urging. In that event, Martin certainly would have been facing incarceration instead of presumptive probation.

It further points out that Martin's criminal history of E included numerous nonperson felonies and misdemeanors spanning 20 years. Finally, it observes that in *Favela*, 259 Kan. at 233-34, we acknowledged that one of the legislative purposes of the sentencing guidelines was to protect public safety and that one of the guidelines' objectives was to reserve incarceration for serious violent offenders who present a threat to public safety. As a result, it argues that Martin's dispositional departure sentence furthers the guidelines' purposes and principles because a parent who exploits his or her position and encourages his or her child to commit a violent felony undoubtedly presents a significant and unique risk to public safety. We observe that this initial encouragement not only represents poor parental behavior modeling but also may lead the son to commit future violent criminal acts.

We also independently observe that the acts of violence in the instant case, although even more serious, are most analogous to the acts in *United States v. Porter*, 924 F.2d 395. There, defendant appealed his conviction and sentence for robbing five banks. The district court departed upward from the United States Sentencing Guidelines' recommended sentence, requiring defendant to serve an additional 2 months in prison "because it found that Porter had urged his son to rob another bank to obtain money for his (Porter's) bail." 924 F.2d at 399. His son's testimony was corroborated by a letter defendant sent another son. The opinion is silent on whether the defendant's urging culminated in an actual armed robbery or attempt. Nevertheless, the First Circuit held that "the factual finding provided a perfectly adequate justification for an upward departure." 924 F.2d at 399.

Accordingly, we hold that the special fiduciary relationship and unique position of trust defendant occupied as a mother, and her violation of that special relationship and unique position, are especially substantial and compelling under the specific facts of this case. Given this holding, we need not examine the sentencing court's other reason for departure. See *State v. Ippert*, 268 Kan. 254, 261, 995 P.2d 858 (2000) ("Kansas law does not require that all of the reasons given for departure by the sentencing court support the departure sentence. As long as one or more of the factors

relied upon is in fact substantial and compelling, the departure sentence will be affirmed.").

Before closing, one additional issue merits our attention. Both the Court of Appeals in its decision, and Martin's counsel during his arguments to this court, stated that "[w]hen the trial court does not rely upon statutory aggravating factors in imposing a departure sentence, the appellate court views the decision to depart with stricter scrutiny." Slip op. at 4 (quoting *State v. Martin,* 279 Kan. 623, 626, 112 P.3d 192 (2005). *Martin* in turn cited *State v. Murphy,* 270 Kan. 804, 807, 19 P.3d 80 (2001), which stated:

"Our leading case on downward departures is *State v. Favela,* 259 Kan. 215, 238, 911 P.2d 792 (1996), where we recognized that in cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart its actions *should be viewed with stricter scrutiny.* We follow this direction in examining the trial court's reasons for departure." (Emphasis added.)

A close examination of *Murphy's* specific page citation to *Favela,* however, reveals that the *Favela* court was merely quoting what the dissenting judge had written in the Court of Appeals before the case came to the Supreme Court:

"The trial court found the fact that the victim was an aggressor, or at least a participant, in the incident which preceded the defendant's crime was a substantial and compelling reason justifying departure. This factor is based on the mitigating circumstance found in K.S.A. 1994 Supp. 21-4716(b)(1)(A). The Court of Appeals did not address whether this factor was a substantial and compelling reason justifying departure, *but the dissent did. The dissent stated:*
'Cases in which the sentencing court does not rely upon any statutory aggravating or mitigating factors to depart should be viewed with a stricter scrutiny. However, when the sentencing court relies upon statutory aggravating or mitigating factors to depart, these reasons should be given great deference by a reviewing court.' 21 Kan. App. 2d at 215." (Emphasis added.)

Our opinions do not clearly demonstrate a considered review and ultimate express acceptance of this uncited position articulated by the dissenter in *Favela.* Moreover, as his dissent reveals, that same judge appeared to suggest that the "stricter scrutiny for nonstatutory factors" should be counterweighted by a "great deference for statutory factors" (although he earlier acknowledged that the determination of whether the reasons given for departure consti-

tute substantial and compelling reasons is a matter of law.) 21 Kan. App. 2d at 215.

This latter suggestion of great deference for statutory factors was apparently rejected by this court in *Favela* when it reviewed the Court of Appeals opinion. See *Favela,* 259 Kan. at 232-33 (issue of whether departure factors are substantial and compelling is a question of law and should be reviewed de novo). In *McKay,* we interpreted *Favela* as holding "that the issue [of whether departure factors are substantial and compelling] should be reviewed de novo *with no deference given to the sentencing court."* (Emphasis added.) 271 Kan. at 728 (citing *Favela,* 259 Kan. at 233.)

In a twist on the usual argument, in *McKay* the State argued that absconding, a *non*statutory departure factor given by the district court, should be given deference. Rather than hold that this nonstatutory departure factor should be subject to stricter scrutiny, the *McKay* court instead expressly held that no deference would be given and that "[t]he essential question, therefore, is whether the sole fact that the defendant absconded for a period of 2 months is a substantial and compelling reason for departure *as a matter of law."* (Emphasis added.) 271 Kan. at 729.

Having now directly considered the issue and its history, particularly our apparent approach in *McKay,* we expressly reject any notion that a sentencing court's use of statutory factors for departure should be reviewed with great deference and that its use of nonstatutory factors for departure should be reviewed with stricter scrutiny. Any language in decisions of Kansas appellate courts inconsistent with this holding is disapproved.

This even-handed approach is also more consistent with the legislative scheme contained in K.S.A. 2005 Supp. 21-4716. There, although the legislature provides lists of aggravating and mitigating factors, the lists are clearly identified as "nonexclusive." Accordingly, we find no legislative intent for grading departure factors simply based upon their appearance in, or absence from, the statute.

The decision of the Court of Appeals is reversed; the decision of the district court is affirmed.