NOT DESIGNATED FOR PUBLICATION

No. 122,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TRISTAN J. DELANEY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 12, 2021. Sentence vacated and case remanded with directions.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: The district court has broad discretionary authority to grant departure sentences as long as the departure sentence is supported by substantial and compelling reasons. Tristan J. Delaney entered a plea agreement that resulted in a presumptive prison sentence. Prior to sentencing, he filed a motion for a dispositional departure, requesting supervised probation. The district court denied the dispositional departure to probation but granted Delaney a durational departure to 48 months of imprisonment. The State now timely appeals, claiming the district court erred when it

1

durationally departed from the presumptive sentencing range under the Kansas Sentencing Guidelines Act (KSGA). Upon review of the sentencing hearing, we find the district court's reasons were conclusory and lacked the clarity and specificity required to be substantial and compelling. We therefore vacate Delaney's sentence and remand the case for resentencing.

## FACTS

Around 7 p.m. on June 26, 2018, Hutchinson police officers responded to a report of shots fired near the 500 block of North Washington Street in Hutchinson, Kansas. Upon arrival, they found a young male, later identified as Norman Cushinberry, shot and lying on the street. Cushinberry did not respond to CPR and was later pronounced dead at the scene. The autopsy report concluded Cushinberry died from multiple gunshot wounds.

Upon searching the scene, officers found a business building nearby with security cameras on its exterior. A camera was located on the building facing the location of the shooting. A copy of the video obtained showed the activities around a green pickup, including the drug transaction and subsequent shooting.

The footage showed an older green Chevrolet pickup travel onto North Washington Street where it parked and later pulled into the alley right next to the house on North Washington Street, where a white car was already parked. As the pickup arrived, multiple people exited the house, and one of those individuals, later identified as Cushinberry, got into the pickup's passenger seat. While the pickup was parked in the alley, the car drove past the pickup and parked across the street in front of the house. A couple minutes later, the individual in the pickup's passenger seat exited the vehicle, went back inside the house, and the pickup drove away. After the pickup left, Delaney exited

2

the car and went inside the same house. A few minutes later Delaney left the house and went back to the car.

About 10 minutes later, the pickup returned and parked in the alley. The car with Delaney inside turned around and parked down the street about a half-block. Delaney then exited the car and walked towards the alley carrying what appeared to be a weapon by his side. He paused at the front porch area of the house he entered earlier before proceeding to the pickup. The pickup left with Cushinberry still in the passenger seat.

A couple minutes later, the pickup returned and parked across the street in front of the same house. Right after the pickup parked, Delaney ran across the street from the house to the driver's side of the pickup and pointed a weapon at the driver. Delaney appeared to try and hit the driver with the weapon, but Delaney fell to the ground after being shot by the driver and laid there while the driver of the pickup exited the vehicle and went around to the passenger side of the pickup. As the driver walked around the pickup, he shot Delaney again as he laid on the ground, grabbed Delaney's weapon, and tossed it on the sidewalk by the passenger side of the pickup. The driver then opened the passenger door, and Delaney, while wounded, ran from the pickup to the car parked down the street. The driver of the pickup pulled Cushinberry's body from the passenger side of the pickup and drove away. Curtis Garcia was later identified as the driver of the pickup.

A neighbor, who lived two houses away from where the shooting occurred, said she was sitting on her front porch around the time of the shooting. She saw an older model Chevrolet pickup park near an alley. A few minutes later, she observed someone approach the pickup, say something to the driver, and aim a rifle at the driver. She could not hear what was said, but, shortly thereafter, she saw the driver grab the barrel of the weapon to push it away from him and heard multiple gunshots. She identified Delaney as

3

the individual who approached the pickup but did not see the firearm he was carrying discharge.

Another neighbor, who lived across the alley from the house Cushinberry entered earlier, went to his door because he heard something outside. When the neighbor opened his door, he heard gunshots and then saw one person run south and another get in the pickup and drive away. He did not know either individual who fled, but he ran over to where the shooting took place calling Cushinberry's name. He found Cushinberry with gunshot wounds still alive and bleeding out of his mouth. He also saw a shotgun lying nearby.

After the shooting, Delaney's girlfriend was driving the car with Delaney inside and flagged down a police officer. The officer found Delaney in the car with blood running down his face and on his torso. The officer assessed Delaney's condition and noticed he appeared to have a bullet wound to the left side of his head.

Delaney's phone was seized by the police from the car, and later they obtained Garcia's phone, too. Text messages between the two showed Delaney contacted Garcia in order to purchase a quarter pound of marijuana from him. The investigation revealed Garcia believed Delaney and Cushinberry initially tried to use counterfeit money to purchase the marijuana. Garcia initially rejected the counterfeit money and drove away after the first contact. Delaney later texted Garcia and told him they would get real $20 bills. Delaney then asked Garcia to return because they had the money.

Garcia was charged with murder in the first degree under K.S.A. 2017 Supp. 21-5402(a)(2) for killing Cushinberry while committing an inherently dangerous felony and distribution of a controlled substance in violation of K.S.A. 2017 Supp. 21-5705. Delaney was charged with murder in the first degree in violation of K.S.A. 2017 Supp. 21-5402(a)(2) under alternative theories. The first mirrored Garcia's charge, while the second

4

alleged Delaney committed aggravated robbery as the underlying inherently dangerous felony in violation of K.S.A. 2017 Supp. 21-5420(b).

The State, based on plea negotiations, filed an amended complaint, charging Delaney with murder in the second degree in violation of K.S.A. 2017 Supp. 21-5403(a)(2). Delaney pled guilty to the amended charge. The presentence investigation report revealed Delaney's criminal history score was I because he had previously been convicted of misdemeanor possession of drug paraphernalia as a juvenile. Based on his criminal history score, Delaney's sentencing range for his second-degree murder conviction was 109-123 months' imprisonment.

Delaney filed a motion for a dispositional departure prior to sentencing, asking the district court to impose probation in lieu of imprisonment. In support for his motion, Delaney argued he had already spent over 16 months in jail and participated in several programs while incarcerated. He also argued he was only 18 years old at the time of the offense and had only one juvenile adjudication before this case. Furthermore, Delaney argued he played a minor role in the offense, his conduct was much less egregious than Garcia's, and he could readily find employment if granted probation.

At the sentencing hearing, Delaney again argued for a dispositional departure, using essentially the same arguments presented in his departure motion. The State responded by disputing Delaney's version of the facts and opposed his request for a dispositional departure. Cushinberry's sister testified in support of Delaney's motion and requested the district court to sentence Delaney to the minimum sentence allowed. Delaney also spoke to the district court during his allocution. He apologized to Cushinberry's family for what occurred and told the district court he accepted responsibility for his actions. After hearing these statements, the district court denied the dispositional departure to probation but granted a durational departure sentence to 48 months' imprisonment with 36 months of postrelease supervision.

ANALYSIS

A sentencing judge must impose the presumptive sentence in the applicable sentencing guidelines grid "unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 2020 Supp. 21-6815(a). "'To be substantial the reason must be real, not imagined, and of substance, not ephemeral.' A reason is 'compelling' when it 'forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.' [Citations omitted.]" *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013).

At sentencing, the district court explained its departure decision on Delaney's conviction as follows:

"I, I'm very impressed with [Cushinberry's sister's] statement and as a representative of the victim's family I take her statement in support of what I'm about to do, which is to depart durationally. I'm going to impose the sentence of 117 months. That is the standard sentence for this offense. I'm going to depart durationally to impose a sentence of 48 months. Mr. Delaney, that is about half of the standard sentence. With good time and it will be less than that of course. I want you to apply yourself to every possible program you can do to better yourself to begin your life. You will be a young adult. Even upon release, you will be a young adult as you are now, with every opportunity to use this to learn from the horrible situation and make amends. So that is my sentence[;] the post release period is 36 months. $400.00 K.B.I. fee is imposed along with the DNA fee is $200.00. I'm going to waive the attorney's fees because of the incarceration and I am distinguishing the sentence for the co-defendant, in essence, co-defendant, the sentence imposed by Judge Chambers because Mr. Delaney did not—well, inadvertently he caused this death but not as intentionally as the other defendant. That is my order. Thank you."

6

The State argues the district court's reasons were not substantial and compelling because the evidence showed Delaney was an equal participant in the activities leading up to the shooting. Thus, the State argues, the district court erred because Garcia did not receive a departure and Delaney did.

Recently, in *State v. Morley*, 312 Kan.___, 479 P.3d 928 (2021), our Supreme Court clarified the standard of review for departure decisions. First, our Supreme Court reinforced that "an abuse of discretion standard applies to determine whether a mitigating factor constitutes a substantial and compelling reason to depart." 479 P.3d at 933. Next, the *Morley* court addressed the Supreme Court's prior attempts to synthesize past cases' standards of review in *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011), which stated:

> "'(1) When the question is whether the record supported a sentencing judge's particular articulated reasons for departure, an appellate court's standard of review is substantial competent evidence; (2) when the question is whether a sentencing judge correctly concluded that particular mitigating factors constituted substantial and compelling reasons to depart in a particular case, including whether those mitigating factors outweighed any aggravating factors if such a balance was necessary, the appellate standard of review is abuse of discretion; (3) when the question is whether a particular mitigating or aggravating factor can ever, as a matter of law, be substantial and compelling in any case, the appellate standard of review is de novo; and (4) when the challenge focuses on the extent of a durational departure, the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history.' [Citation omitted.]" *Morley*, 479 P.3d at 933.

Our Supreme Court concluded the language from *Spencer* needed clarification for multiple reasons. "First, the language in *Spencer* stating 'whether those mitigating factors outweighed any aggravating factors if such a balance was necessary,' 291 Kan. at 807, was disapproved in *State v. Jolly,* 301 Kan. 313, 322, 342 P.3d 935 (2015)." *Morley*, 479

P.3d at 933-34. Our Supreme Court also found that the second and third inquiries were confusing because "with the phrase 'substantial and compelling' used in both, they appear to ask the same question, even though each poses a different inquiry." 479 P.3d at 934. Furthermore, our Supreme Court believed the three standards of review listed in *Spencer* generated even greater potential for confusion. *Morley*, 479 P.3d at 934.

Ultimately, our Supreme Court concluded an appellate court should review a district court's departure decision using an abuse of discretion standard of review. 479 P.3d at 934. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

When reviewing whether a district court erred by relying on a nonstatutory factor, appellate courts should review the decision following a three-step framework:

> "(1) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (2) if it can, then decide whether that nonstatutory factor's existence is supported by the record; and (3) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court." *Morley*, 479 P.3d at 934-35.

With this clarification of our standard of review, we turn to K.S.A. 2020 Supp. 21-6815(c)(1), which contains a nonexclusive list of six mitigating factors for the district court to consider when determining whether substantial and compelling reasons for a departure exist. Here, the district court failed to explicitly state on which statutory factors it relied when making its determination. However, the district court's statement about Delaney's culpability when compared to Garcia's could fit within K.S.A. 2020 Supp. 21-6815(c)(1)(B), which states, in part: "The offender played a minor or passive role in the

8

crime or participated under circumstances of duress or compulsion." Delaney contends the district court also relied on K.S.A. 2020 Supp. 21-6815(c)(1)(A), which applies when "[t]he victim was an aggressor or participant in the criminal conduct associated with the crime of conviction," but the district court never mentioned the role Cushinberry played in the situation when making its decision. See *Spencer*, 291 Kan. at 811 ("'The court's comments at the time of sentencing, not the written journal entry, govern as to the reasons for departure.'").

In addition to the listed mitigating factors, the district court also relied on the statement Cushinberry's sister made at the sentencing hearing. Though such reason is not listed as a mitigating factor under K.S.A. 2020 Supp. 21-6815(c)(1), sentencing courts can consider nonstatutory factors to depart if the factors are consistent with KSGA principles. *Bird*, 298 Kan. at 397. "A sentencing court's use of statutory factors should not be reviewed with greater deference than a decision to rely upon nonstatutory factors, and the use of nonstatutory factors should not be subjected to stricter scrutiny." *State v. Theurer*, 50 Kan. App. 2d 1203, 1215-16, 337 P.3d 725 (2014) (citing *State v. Martin*, 285 Kan. 735, 747, 175 P.3d 832 [2008], *disapproved of on other grounds by State v. Morley*, 312 Kan. ___, 479 P.3d 928 [2021]).

The only differentiation between Garcia and Delaney the district court provided was to say that Delaney inadvertently caused the death of Cushinberry, whereas Garcia intentionally caused Cushinberry's death. But the record clearly reflects Delaney actively participated in the attempted drug deal before the shooting took place. We chose not to detail the extent of the text message communications between Delaney and Garcia for this opinion since they were not specifically mentioned by the district court in its decision to grant the departure.

Despite the evidence about the events leading to the shooting, there is no doubt Garcia fired multiple shots hitting both Delaney and Cushinberry, ultimately causing

Cushinberry's death. The evidence reflects Delaney had the rifle in his possession and pointed it at Garcia but did not fire it at Garcia. In sum, the evidence might support the conclusion Garcia was more directly responsible for Cushinberry's death than Delaney, but the district court did not specifically make that finding or clearly state it.

The district court's finding does show it relied on the statement Cushinberry's sister made at the sentencing hearing even though the finding was not as specific as it could have been to aid us in our appellate review. The State does not argue it was improper for the district court to consider the sister's statement or that the statement would not constitute a substantial and compelling reason to justify a departure. In contrast, Delaney points to *State v. Heath*, 21 Kan. App. 2d 410, 416-17, 901 P.2d 29 (1995), where a prior panel of this court held that a "trial court may consider the statements of crime victims or their families as evidence of either aggravating or mitigating circumstances."

Cushinberry's sister described the great friendship Delaney had with Cushinberry and, despite what happened, she and her family still cared deeply for Delaney. She said Garcia, not Delaney, was primarily responsible for her brother's death. In her mind, Delaney deserved the least harsh sentence the district court could impose. We agree the use of the sister's statement could be a nonstatutory factor, if the district court had been more specific with its findings about the sister's testimony and not just made conclusory statements to justify the durational departure. See K.S.A. 2020 Supp. 21-6815(c)(1).

Additionally, in *State v. Brown*, 305 Kan. 674, 694, 387 P.3d 835 (2017), our Supreme Court stated: "A departure sentence should be upheld when even one factor relied upon by the sentencing court is substantial and compelling. Moreover, the individual factors need not be sufficient on their own to justify departure, so long as the factors collectively constitute a substantial and compelling basis for departure." We agree departure sentences should be upheld when the district court has provided substantial and

compelling specific statutory and/or nonstatutory reasons to grant the departure. However, the district court here was less than clear on its findings and leaves too much speculation for us to determine the exact statutory and/or nonstatutory bases it relied upon to grant Delaney's substantial durational departure.

Next, the State argues the district court abused its discretion because the extent to which the district court departed from the presumptive sentence was not commensurate with the seriousness of Delaney's conviction. We will briefly address this argument to aid the district court on remand.

The State argues the district court's ruling was unreasonable because "[n]o reasonable person would issue a sentence that amounts to less than 50 percent of the original sentence outlined by the KSGA for the severity level for this offense." And the State claims that Delaney should serve at least 109 months, the minimum KSGA sentence based on his crime of conviction and his criminal history score of I.

Because Delaney's crime of conviction is not an extreme sexually violent crime, the statute controlling durational departure sentences of imprisonment does not limit the district court's discretionary authority to durationally depart from an imprisonment sentence so long as it is "proportionate to the severity of the crime of conviction and the offender's criminal history" while considering the principals of the KSGA. K.S.A. 2020 Supp. 21-6818(b)(1); see K.S.A. 2020 Supp. 21-6818(a). The State's argument fails.

We vacate Delaney's sentence and remand to the district court for resentencing. The resentencing on remand is subject to the district court's broad discretion in imposing a durational departure sentence of imprisonment. At the resentencing hearing, should the district court determine a durational departure sentence is still justified, it must specifically state on the record, as required by K.S.A. 2020 Supp. 21-6815(a), the statutory and/or nonstatutory reasons on which it is relying to grant the durational

departure. See K.S.A. 2020 Supp. 21-6815(c)(1) (nonexclusive list of mitigating factors for departure sentence); K.S.A. 2020 Supp. 21-6818(b)(1) (durational departure sentence imposed to be proportionate to severity of crime); *Bird*, 298 Kan. at 397 (finding nonstatutory factors can be considered for departure sentence).

Sentence vacated and case remanded with directions.