No. 101,077

STATE OF KANSAS, *Appellant*, v. HAROLD DEAN SPENCER, *Appellee*.

(248 P.3d 256)

Opinion filed March 18, 2011.

*Natalie A. Chalmers,* assistant district attorney, argued the cause, and *Jamie L. Karasek,* assistant district attorney, *Chadwick J. Taylor,* district attorney, and *Steve Six,* attorney general, were on the brief for appellant.

*Carl Folsom, III,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is an appeal taken by the State from the departure sentence given defendant Harold Dean Spencer by District Court Judge Matthew J. Dowd. Spencer pleaded guilty to two counts of aggravated indecent liberties with a child, both off-grid felonies punishable under Jessica's Law. One of the victims was his 6-year-old great-granddaughter; the other was a granddaughter of similar age who was living with Spencer and his wife at the time the crimes came to light.

The potential issues before us are:

1. Whether the sentencing judge properly relied on the same findings to support both a departure from the mandatory hard 25 sentence under Jessica's Law, K.S.A. 21-4643(d), to a sentence

under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, and a dispositional departure from a KSGA prison term under K.S.A. 21-4716(a) to probation.

2. Whether the reasons articulated by the sentencing judge for departure from the mandatory minimum of Jessica's Law were substantial and compelling.

3. Whether the reasons articulated by the sentencing judge for the dispositional departure were substantial and compelling.

4. Whether the sentencing judge abused his discretion in the extent of departure granted.

5. In the event the defendant's sentences must be vacated because either or both departures were inappropriate, whether a new sentencing judge is permitted on remand to re-evaluate his or her reasons and re-grant or deny either or both departures and to consider a durational departure.

6. Whether, on a State appeal of a departure sentence for aggravated indecent liberties, this court has authority to entertain a defense challenge to the offense severity level used by the sentencing judge, and, if so, the correct method and result for a departure from Jessica's Law to a sentence "pursuant to the sentencing guidelines act."

## FACTUAL AND PROCEDURAL BACKGROUND

Spencer was charged with one count of aggravated indecent liberties in violation of K.S.A. 21-3504(a)(3)(A), perpetrated on a great-granddaughter, and one count of rape in violation of K.S.A. 21-3502(a)(2), perpetrated on a granddaughter. On arrest, Spencer confessed to fondling the girls but not to rape. In exchange for his guilty pleas to two counts of aggravated indecent liberties, the State agreed to stand silent at sentencing.

Spencer moved for departure, arguing in his written motion that his waiver of preliminary hearing and jury trial had spared the victims emotional harm and that he had accepted responsibility and expressed remorse. He also argued that his lack of prior criminal activity and age of 76 justified departure. His counsel also wrote that Spencer had "been law-abiding and gainfully employed his entire life," that he had "raised several children and grandchil-

dren," that he was "the primary care-giver for his sick and ailing wife," that he had "strong support from his family and others in the community," and that the "victim's mother favors probation."

At the sentencing hearing, several members of Spencer's family spoke of his vital role among their kin and his caretaking of his wife, as well as previous acts of kindness and generosity. It appears from the record that certain other members of the family may have disagreed, as there were references to the crimes tearing the family apart. A minister also spoke on Spencer's behalf. Judge Dowd also had access to victim impact statements, one written by the mother of the great-granddaughter, who opposed Spencer's imprisonment, and one composed by the granddaughter, who indicated that Spencer should go to jail. Judge Dowd also noted numerous letters written by "friends and family of the defendant indicating that he is a good citizen, a good person, and a suitable candidate for some sort of leniency." When Judge Dowd asked Spencer if he had anything to say, Spencer said only, "I just wish I could undo it."

After airing of a disagreement between the parties about the point on the sentencing guidelines to which a district judge departing from a hard 25 under Jessica's Law should go—with the State arguing for an offense severity level 1 and the defense arguing for an offense severity level 3—Judge Dowd ruled:

"Certainly, this is always a serious situation, a serious crime. I am very aware of the impact it's had on the defendant's family, on his friends, and on the community. There's a kind of a mixed input in regard to the harm that was done to these young ladies. It does not appear that the harm was terribly significant. The mom of the children herself says that they have dealt with this fairly well. And so I think the victim, the victim impact is not as serious as it would be in an ordinary case of this nature."

At this point, counsel for the State corrected the judge, saying that there were different mothers of the two victims involved in the case. Judge Dowd acknowledged this fact. He then continued:

"In any event, I think what I've heard here today would seem to indicate that a departure is necessary, appropriate, and there are substantial and compelling reasons to depart. I think the age of the defendant, his prior record, and his support from his family and friends would lead the Court to believe that this might have been an aberration or a momentary lapse in an otherwise good life, so I am going to depart.

"I am going to adopt—since I'm going to also depart durationally, I think it's really not terribly significant how many years or months we give, because I am going to depart dispositionally. But I will adopt the State's theory and go from life imprisonment to a number of years—or pardon me, a number of months as indicated on the guideline grid for the severity level 1. So I'm going to impose a 155-month sentence to the Secretary of Corrections. The defendant's criminal history is "I" and that's the low range on the severity level number 1, 155 months.

"I'm also going to depart dispositionally. I think that it would not, it would not serve the end of justice to incarcerate the defendant. I think that a significant amount of time in prison would be tantamount to a life sentence for this man in light of his age, and age is listed as one of the reasons to depart. Usually we think of that as a young person not really aware of his responsibilities, but I think it also can be interpreted as age in the sense of an elder person.

"In any event, I'm going to impose the 155 months, 36 months of post-release supervision and 36 months supervised probation . . . .

. . . .

". . . And also, we should impose the same sentence on Count 2. And they will run concurrent. That will be the order of the Court."

A month after the sentencing hearing and the State's filing of its notice of appeal, when the parties could not agree on the appropriate content of the journal entry, the defendant filed a written objection. The objection sought to have the listed reasons for departure expanded from the three enumerated in the State's proposed journal entry—the age of the defendant, the lack of a criminal record, and family support—to ten—(1) the age of the defendant; (2) the defendant's health; (3) "Defendant is the primary caretaker for his extremely ill wife"; (4) lack of prior record; (5) support of family and friends; (6) expression of remorse and claim of responsibility; (7) "Victim, through mother, asked the Court to grant probation"; (8) "Degree of harm associated with this particular crime was significantly less than is typical for such offense"; (9) "Defendant did not exercise any confrontational rights by way of preliminary hearing or trial and plead [sic] guilty"; and (10) "State stood silent thereby offering no opinion as to sentencing."

The State responded in writing to the defense objection, arguing that the court's minutes for the sentencing hearing specifically referenced only three departure factors. The minutes are not in the record on appeal. The State also quoted a portion of the judge's

remarks at sentencing, specifically: " '[T]here are substantial and compelling reasons to depart. I think the **age of the defendant**, **his prior record**, and his **support from his family and friends** would lead the Court to believe that this might have been an aberration or a momentary lapse in an otherwise good life, so I am going to depart.' " The State continued: "While Defendant may desire to have the addition of seven more departure factors, such were clearly not relied upon by the Court as evinced by the record and the minutes."

Approximately a month after the State filed its response, Judge Dowd held a hearing to settle the journal entry. He opened the hearing by stating:

"The issue before the Court is the journal entry and . . . the defense perceived as the Court did that the journal entry submitted by the State was rather summary.

"I would concede at the outset that the quotation of the State in regard to the factors listed for departure is accurate. The statutory factors were what the State listed and the only issue is whether or not those factors should be expanded, listing several other facts that c[a]me to the attention of the defense as well as the Court.

"So I'm seriously considering granting that motion."

Judge Dowd then asked for the State's comments. The prosecutor argued that the sentence was final at the time of pronouncement and that the portion of the transcript quoted in the State's response to the defense objection was accurate. He also corrected the judge, pointing out that the age of the defendant and his prior record were statutory departure factors under Jessica's Law, while the appropriateness of family support as a mitigator could only be based on case law. The prosecutor concluded:

"So I think it would be fair to say that the Court was not just listing the statutory factors but was listing the combination of statutory as well as case law basis.

"What we're left with in the record is what it is and the journal entry reflects the record as well as the minutes. I think it would be inappropriate or imprudent at this point in time for the Court to add bas[e]s for departure, essentially to enlarge the record.

"It would be the State's position that doing so would ultimately be a—may, in fact, result in an illegal sentence and I don't think is—there's a basis—the ability—the authority for the Court to do so under law."

Defense counsel agreed that no expansion of the record was appropriate after the sentencing hearing but argued that the judge

had already considered the additional factors sought to be listed in the journal entry. Judge Dowd ruled in favor of the defense, saying:

"Well, I think it's within the Court's discretion to supplement the record. In my judgment and my recollection, these factors . . . brought to our attention currently here were part of the motion to depart. They were a significant part of the evidence and I think more importantly they were a very significant factor and had a very significant impact on me as far as making the decision that I made.

"So I think in the interest of a clearer and comprehensive record, that those factors should be added to the record and I will do so over the objection of the State.

"I will sign the journal entry submitted by [the State] and I will also sign the order submitted by the defense adding those factors and make a specific finding that those were a part of the motion, a part of the evidence and a part of the Court's ruling and a part of the Court's decision to depart."

Despite Judge Dowd's last statement, the written court order regarding the journal entry, filed the same day as the hearing on the objection, read in pertinent part:

"[T]he Court is not willing to sign the journal entry as proposed by the State. The Court would find that the following additional factors were considered by the Court in determining a departure was warranted: the degree of harm was significantly less than is typical as was evidenced by the mother of [A.S.], who requested leniency; the age, health and lack of prior record of the defendant; the support of family and friends; the fact that the defendant was and is the primary caretaker of his critically ill wife; and the fact that the defendant expressed remorse and claimed responsibility by not exercising his confrontational rights.

"In light of the Court's clarification of reasons for departure, the State is hereby ordered to prepare a journal entry reflecting the above findings."

No journal entry other than that originally proposed by the State appears in the record on appeal. It is signed by Judge Dowd, apparently on the same day as the hearing.

Since the State took its appeal, it has added to the record on appeal the victim impact statements and letters Judge Dowd evidently considered at sentencing. There are actually three victim impact statements: one written by the mother of the great-granddaughter, which denied any lingering effects on the great-granddaughter; one by the granddaughter, composed on a form designed for children, in which she described experiencing continuing ill effects and favored sending Spencer to prison; and one written by the granddaughter's father, who asked that Spencer be given pro-

bation. The letters to which Judge Dowd made reference during the sentencing hearing are from family members and one ex-family member; most question Spencer's guilt rather than address appropriate sentence; many emphasize that he is the only family member available to care for his seriously ill wife.

## ANALYSIS

### Sameness of Findings Supporting Departures

Under the version of Jessica's Law in effect at the time of the 2007 crimes at issue here, a defendant who is 18 years old or older at the time he or she commits aggravated indecent liberties on a child younger than 14 ordinarily is subject to a Jessica's Law hard 25 sentence for a first offense. K.S.A. 21-4643(a)(1)(C). A sentencing judge may depart from that "mandatory minimum term of imprisonment" if the judge "finds substantial and compelling reasons, following a review of mitigating circumstances." K.S.A. 21-4643(d). The judge

"shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. The departure sentence shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 *et seq.* . . . , and no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder. [A]s used in [K.S.A. 21-4643(d)], mitigating circumstances shall include, but are not limited to, the following:

(1)  The defendant has no significant history of prior criminal activity.

(2)  The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

(3)  The victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

(4)  The defendant acted under extreme distress or under the substantial domination of another person.

(5)  The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

(6)  The age of the defendant at the time of the crime." K.S.A. 21-4643(d).

Once a "sentence becomes a guidelines sentence, the district court is free to depart from the sentencing grid if it states on the record findings of fact and reasons justifying a departure that are supported by evidence in the record and are substantial and compelling." *State v. Gracey*, 288 Kan. 252, 259, 200 P.3d 1275 (2009).

K.S.A. 21-4716(a) provides that a sentencing judge shall impose the presumptive sentence under the sentencing guidelines "unless the judge finds substantial and compelling reasons to impose a departure"; if the judge chooses to depart, he or she "shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." The nonexclusive list of statutory mitigating factors includes "[t]he degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense." K.S.A. 21-4716(c)(1)(E). The factors explicitly listed do not include the age of the defendant, his or her lack of a significant criminal history, or family support. K.S.A. 21-4716(c)(1)(A)-(E).

The State argues that Judge Dowd erred by using the *same* mitigating circumstances to justify *both* the departure from the Jessica's Law hard 25 to the sentencing guidelines *and* the dispositional departure from what the judge believed to be the guidelines' presumptive prison sentence of 155 months to 36 months' probation. This issue was specifically left open in the *Gracey* opinion, decided under the same version of Jessica's Law applicable in this case. See *Gracey*, 288 Kan. at 261. This argument was not made to Judge Dowd here, and the State's choice to raise the argument on this appeal might be viewed as a violation of its agreement to stand silent at sentencing. However, Spencer does not raise these objections. We therefore will address the merits of the State's argument.

The State initially acknowledges that the applicable standard of review is that for statutory interpretation, which is de novo. See *State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008). But it then proceeds to argue that one reason a sentencing judge should be required to differentiate between the mitigators justifying a departure from Jessica's Law and those justifying a dispositional departure from the default guidelines sentence is that the standard of review applied to one is different from that applied to the other. Citing *State v. Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 5, 194 P.3d 1195 (2008) (Jessica's Law), and *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008) (guidelines sentence), the State asserts that an appellate court evaluates a district court decision on whether mitigators constitute substantial and compelling reasons

for departure from Jessica's Law under an abuse of discretion standard. In contrast, it argues, appellate review of a sentencing judge's performance under K.S.A. 21-4716 requires it to first examine the record to discern whether substantial competent evidence supports the articulated reasons for the departure. If that hurdle is cleared, it says, the appellate court then determines, as a matter of law, whether the reasons are substantial and compelling. See K.S.A. 21-4721(d)(1), (2).

In *Ortega-Cadelan*, the defendant challenged the sentencing judge's denial of a motion to depart from a Jessica's Law hard 25 for a rape of a child. Justice Luckert, writing for a unanimous court, rejected a defense argument that each of the mitigators listed in Jessica's Law constituted a per se substantial and compelling reason for a departure, likening the procedure to

"that mandated by K.S.A. 21-4716( c)(1), the general departure provision in the [sentencing guidelines] . . . .

"[U]nder both the [sentencing guidelines] provision and [Jessica's Law], the district court must consider whether a mitigating circumstance is a substantial and compelling reason for departure under the facts of the case. There is no formula for this determination, and the list of nonexclusive mitigating circumstances merely serves as a guide for analysis." *Ortega-Cadelan*, 287 Kan. at 165.

The sentencing judge's determination that the mitigating circumstances in a particular case constitute substantial and compelling reasons to depart was then evaluated under an abuse of discretion standard. *Ortega-Cadelan*, 287 Kan. at 165-66. It is worthwhile to note that the *Gracey* opinion followed *Ortega-Cadelan* in stating that a decision to depart is within the discretion of the sentencing court. *Gracey*, 288 Kan. at 260; see *State v. Thomas*, 288 Kan. 157, 164, 199 P.3d 1265 (2009). Many others among our now-numerous Jessica's Law cases have done likewise. See *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010); *State v. Reyna*, 290 Kan. 666, 689-90, 234 P.3d 761 (2010); *State v. Trevino*, 290 Kan. 317, 322-23, 227 P.3d 951 (2010); *State v. Marler*, 290 Kan. 119, 127, 223 P.3d 804 (2010); *State v. Robison*, 290 Kan. 51, 56-57, 222 P.3d 500 (2010); *State v. Mondragon*, 289 Kan. 1158, 1162, 220 P.3d 369 (2009); *State v. Ballard*, 289 Kan. 1000, 1009-10, 218 P.3d 432 (2009); *State v. Seward*, 289 Kan. 715, 721-

22, 217 P.3d 443 (2009); *State v. Spotts*, 288 Kan. 650, 654-56, 206 P.3d 510 (2009); *State v. Gilliland*, 2010 WL 1379182, at \*3, unpublished opinion filed April 2, 2010. Further, we have specifically held that the exercise of discretion by a sentencing judge deciding a departure motion does not violate a defendant's right to procedural due process. See *State v. Garza*, 290 Kan. 1021, 1035, 236 P.3d 501 (2010).

Justice Luckert also wrote the second decision cited by the State on this issue, *State v. Blackmon*, 285 Kan. 719, a non-Jessica's Law case. *Blackmon* also differed fundamentally from *Ortega-Cadelan*, because the issue the court examined was not whether the record supported the existence of a departure factor or whether, on the facts of the case, any cited factor qualified as substantial and compelling. Rather, the issue was whether, as a matter of law, a sentencing judge could *ever* rely on his or her disagreement with a jury's verdict on the level of recklessness involved in a crime to support a downward departure under K.S.A. 21-4716. The answer was no. See *Blackmon*, 285 Kan. at 728 (sentencing judge cannot be permitted to become "super juror"); see also *State v. Martin*, 279 Kan. 623, 627-28, 112 P.3d 192 (2005) (issue whether defendant's status as ringleader could *ever* support upward departure reviewed as a question of law; statutory interpretation required). *Gracey* echoed *Blackmon*, although it did not cite to it, relying on the de novo standard applicable to statutory construction questions to decide whether a dispositional departure was *ever* authorized after a departure from Jessica's Law. See *Gracey*, 288 Kan. at 257 (citing *State v. Ruiz-Reyes*, 285 Kan. 650, 653, 175 P.3d 849 [2008]).

Another recent non-Jessica's Law case that bears revisiting on the nature of our standard of review is *State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2008), which was written by now Chief Justice Nuss and filed 9 months before *Ortega-Cadelan*. It involved an upward dispositional departure from presumptive probation; the Court of Appeals had held that the factors on which the sentencing judge relied were not valid departure factors. On the State's petition for review, we upheld the departure sentence, ruling that the defendant mother violated a special fiduciary relationship and her

unique position of trust when she handed her 16-year-old son a gun and exhorted him to shoot into an occupied house. *Martin*, 285 Kan. at 742-43, 745-46. Chief Justice Nuss wrote:

"There is no dispute in the instant case about whether the evidence in the record supports the reasons given by the sentencing court for the departure. Rather, the dispute is whether these reasons are substantial and compelling for departure. Analysis of the present dispute consists of two parts: First, are the reasons given by the sentencing court valid departure factors and, second, 'are the reasons, as a whole, substantial and compelling reasons for departure in a given case?' *State v. McKay*, 271 Kan. 725, 729, 26 P.3d 58 (2001). This determination is a matter of law which we review de novo. 271 Kan. at 728." *Martin*, 285 Kan. at 739.

In *State v. Favela*, 259 Kan. 215, 911 P.2d 792 (1996), we also dealt with the appropriate standard of review on the extent of non-Jessica's Law durational sentencing departures. Such a question is subject to an abuse of discretion standard, which is defined as consistent with the " 'enacted purposes and principles of [the] sentencing guidelines' " and " 'proportionate to the severity of the crime of conviction and the offender's criminal history.' " *Favela*, 259 Kan. at 219 (quoting K.S.A. 1994 Supp. 21-4719[b][1]).

In short, as sometimes happens, this case exposes some "failure to communicate" in our previous general statements of the standards of review governing Jessica's Law and non-Jessica's Law sentencing departure cases. It appears, however, that the following synthesis is workable and true to the majority of our relevant precedent: (1) When the question is whether the record supported a sentencing judge's particular articulated reasons for departure, an appellate court's standard of review is substantial competent evidence; (2) when the question is whether a sentencing judge correctly concluded that particular mitigating factors constituted substantial and compelling reasons to depart in a particular case, including whether those mitigating factors outweighed any aggravating factors if such a balance was necessary, the appellate standard of review is abuse of discretion; (3) when the question is whether a particular mitigating or aggravating factor can *ever*, as a matter of law, be substantial and compelling in *any* case, the appellate standard of review is de novo; and (4) when the challenge

focuses on the extent of a durational departure, the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history.

Given this synthesis, the State's argument that varying standards of review command differentiation in the mitigating factors supporting a departure from Jessica's Law and those supporting a dispositional departure from the default guidelines prison sentence dissolves.

The State also argues that both the character of the mitigators listed in Jessica's Law and the structure it imposes upon a judge's procedure support its view that Judge Dowd erred when he failed to distinguish two sets of mitigating factors.

Regarding the character of the Jessica's Law mitigators, the State relies on the *noscitur a sociis* canon of statutory construction. Literally "it is known from its associates," the canon requires a court to conduct a comparison of the elements of a list to determine meaning of any one item. The State posits that each of the statutory mitigators in Jessica's Law focuses on the culpability of the particular defendant, rather than a broader class of concepts relevant to a reduced need for punishment. Read in this light, the Jessica's Law mitigators are not equivalent and interchangeable with the mitigators listed or not listed in K.S.A. 21-4716(c)(1).

Regarding structure, the State sees significance in the requirement under Jessica's Law that a sentencing judge evaluate only mitigators before departing. It points out that K.S.A. 21-4716, again, is broader in scope, permitting a sentencing judge to evaluate both mitigators and aggravators before a decision to depart. The State also cites the requirement of a balance of aggravators and mitigators by a jury considering the death penalty and a judge considering imposition of a hard 40 or 50 life sentence, see K.S.A. 21-4624(e) (death penalty); K.S.A. 21-4635(b) - (d) (hard 40, 50), to demonstrate that the sole focus on mitigators in Jessica's Law is unique.

These character and structure arguments by the State are unpersuasive.

There is no need to resort to a statutory canon of construction, because the plain language of the statutes tells us what we need to know about the legislature's intentions. On character, each statute explicitly provides that its list of mitigating factors is nonexclusive. See K.S.A. 21-4643(d); K.S.A. 21-4716(c)(1). This means that the courts are free to develop additional mitigating factors on a case-by-case basis. In addition, not all of the Jessica's Law factors focus exclusively on a particular defendant's level of culpability, as the State insists. The third listed factor expressly mentions the role of the victim, as well as the defendant, in the crime. See K.S.A. 21-4643(d)(3). In comparison, the mitigating factors listed in K.S.A. 21-4716(c)(1)(A) through (D) include factors focused on the level of the defendant's culpability, e.g., role in the crime, duress, compulsion, physical or mental impairment, as well as other types of factors, e.g., victim's aggression, lesser degree of harm or loss.

On structure, no balance between mitigators and aggravators such as that implied in K.S.A. 21-4716 or explicitly provided for in K.S.A. 21-4624(e) or K.S.A. 21-4635(b)-(d) is necessary when Jessica's Law is the starting point. The only way for Jessica's Law to operate is to intensify, if not lengthen, a sentence. It makes 25 years a mandatory minimum, unless certain mitigators justify a departure. Simply put, there is nowhere to go but to a less-intense place. Under K.S.A. 21-4716, in contrast, departure either upward or downward is possible. Likewise, when a jury is asked to deliberate on a life sentence versus a death sentence, it is sensible and appropriate for both mitigators and aggravators to play a role in the choice between a show of mercy and the ultimate penalty; neither is the otherwise automatic sentence. The same can be said when a judge weighs mitigators and aggravators to determine whether a hard 40 or 50 sentence should be imposed.

The State's final argument in favor of requiring a sentencing judge to distinguish between the mitigators that justify a departure from Jessica's Law and then a dispositional departure from the default guidelines prison sentence is an analogy to K.S.A. 21-4719(c)(2). As Spencer's brief points out, this citation actually supports defendant's position more than the State's. K.S.A. 21-4719(c)(2) deals with the situation in which the sentencing judge

imposes a prison term as an upward dispositional departure. It specifically provides that, if the judge chooses to then impose a term longer than that specified in the applicable guidelines grid box, the additional prison time "shall constitute an additional departure and shall require substantial and compelling reasons independent of the reasons given for the dispositional departure." K.S.A. 21-4719(c)(2). This language demonstrates that the legislature knew exactly how to provide for the procedure advocated by the State for the stacked intensity-lessening departures at issue here. It could have clearly provided that a sentencing judge must rely on separate mitigators to depart, first, from Jessica's Law and, second, dispositionally from the default guidelines sentence. It did not.

In view of all of the foregoing, this court endorses the district court's undifferentiated approach to the two departures in this case. Under the statutes at issue, as a matter of law, Judge Dowd was free to use the same mitigating factors to justify both a departure from the mandatory minimum of Jessica's Law and a dispositional departure from the default guidelines prison sentence to probation.

*Existence of Substantial and Compelling Reasons for Departure from Jessica's Law*

The parties agree that the standard of review governing this issue is abuse of discretion, which is consistent with the synthesis above.

Again, the State did not make this argument before the district court. It had agreed, in exchange for Spencer's guilty pleas, to stand silent at sentencing. Again, because Spencer has not objected, we address the merits.

The parties first contest a threshold question of law, *i.e.*, the significance, if any, of the seven mitigating circumstances not included in the State's original proposal for the journal entry. These seven mitigating circumstances were listed in the defense objection to the journal entry, which Judge Dowd attempted to endorse explicitly and add to the record supporting his decision by way of the hearing on the objection and, apparently, his signatures on *both* an order drafted by the defense *and* the State's journal entry. The

transcript of sentencing includes the judge's mention of the three factors originally listed by the State, *i.e.*, Spencer's age, his lack of a criminal record, and the support of his family and friends, and a factor listed under K.S.A. 21-4716(c)(1)(E), *i.e.*, "[t]he degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense."

"The court's comments at the time of sentencing, not the written journal entry, govern as to the reasons for departure." *State v. Murphy*, 270 Kan. 804, 806, 19 P.3d 80 (2001) (citing *State v. Jackson*, 262 Kan. 119, 135, 936 P.2d 761 [1997]). In addition, Jessica's Law explicitly requires the downward departure factors upon which a judge relies to be articulated by the judge "on the record at the time of sentencing." K.S.A. 21-4643(d).

The defense cites *Blackmon* to support Judge Dowd's ability to supplement the record by way of the hearing to settle the journal entry and his dueling signatures. *Blackmon* permitted a remand so that a sentencing court could clarify its reasoning, rejected on appeal, to justify a downward departure. See *Blackmon*, 285 Kan. at 730-32. The opinion included the following language:

"This analysis raises the question of whether upon remand it is appropriate for the sentencing court to clarify the reasons for departure or whether the initial failure dooms Blackmon's departure motion. Kansas precedent shows that remand for clarification of departure reasons has been allowed with respect to upward departures.

. . . .

". . . We can discern no reason why the same policy would not apply to downward departures. Consequently, when a sentencing court fails to state substantial and compelling reasons for a downward departure from a presumptive sentence on the record at an initial sentencing hearing and as a result the sentence is vacated on appeal, upon remand the sentencing court may cite appropriate reasons justifying the imposition of a downward departure sentence and may impose such a sentence subject to the usual review process.

"In the case at hand, the limited record available on appeal indicates the sentencing court may have had additional reasons for departure but did not clearly state those reasons on the record at the sentencing hearing. Consequently, rather than reverse the sentence as did the Court of Appeals panel, the appropriate remedy is to vacate the sentence. On remand, if the sentencing court determines there are reasons for departure other than the court's disagreement with the jury's determination that the State established an element of the crime of conviction,

the sentencing court may impose a departure sentence, which then would be subject to appeal under K.S.A. 21-4721." *Blackmon*, 285 Kan. at 730-32.

In short, this court must decide whether Spencer could receive the essence of the same benefit bestowed on the defendant in *Blackmon*—a second bite at the departure justification apple.

On the surface, it seems at least as fair here, from a procedural perspective, to allow some post-sentencing supplementation of Judge Dowd's reasoning, because Spencer lodged an objection in the district court to what he viewed as omissions from the State's proposed journal entry. This was the case, even though he had received everything he could have hoped for in terms of leniency.

But a close review of the timing of events reveals that Spencer's objection probably was not merely an altruistic move to complete the court's file. The sentencing was held on June 27, 2008, and the State filed its notice of appeal of the departure sentence immediately. It served its proposed journal entry a few days later, and Spencer did not file his objection until July 29, 2008. The hearing to settle the journal entry was held September 10, 2008, and the order filed the same day. The original proposed journal entry also was signed by the judge on September 10 and filed on September 12, 2008. The State filed a motion to docket its appeal out of time on September 15, 2008, and the motion was granted and the docketing statement filed on September 29, 2008, finally depriving the district court of jurisdiction. In other words, long before Spencer filed his objection with his list of not 3 or 4 but 10 substantial reasons the judge (mostly silently) harbored for granting the two departures, Spencer knew that those reasons would be scrutinized by the Court of Appeals or by this court. For that matter, it is highly likely Judge Dowd also was aware of the filing of the State's appeal.

We hold that the aspect of the *Blackmon* ruling on which Spencer now seeks to rely should be limited to like situations, *i.e.*, those in which a Jessica's Law sentence has been vacated by an appellate court and the case remanded for resentencing. See *Blackmon*, 285 Kan. at 730-32. *Blackmon* was not a case in which the content of the record may have been manipulated. It also cannot excuse the express Jessica's Law requirement that departure factors be stated

by the judge on the record at sentencing. We therefore limit our evaluation at this time of whether the mitigators cited in arriving at Spencer's departure from Jessica's Law are substantial and compelling to the four factors Judge Dowd originally referenced at sentencing.

Under the standard of review synthesis outlined above, we review these mitigating factors to determine whether Judge Dowd abused his discretion in deciding that they constituted substantial and compelling reasons to depart from Jessica's Law. The State does not question whether the record on appeal contains substantial competent evidence to support these mitigators.

*Age of defendant.* The State makes a compelling argument that Judge Dowd's reference to Spencer's age of 76 had nothing to do with Spencer's judgment or lack thereof at the time of the crimes, which is the traditional significance of an age mitigator. See *Murphy*, 270 Kan. at 807; *Favela*, 259 Kan. at 235. The statute expressly states that it is the age of the defendant at the time of the crime that matters. See K.S.A. 21-4643(d)(6). But Judge Dowd appears to have considered Spencer's age as significant only because of the likelihood that a Jessica's Law hard 25 would actually mean life behind bars. In essence, the State argues that the length of a sentence in relation to the defendant's probable lifespan cannot be a substantial and compelling reason for departure in this case. The defense offers little in the way of counterargument, pointing out only that the age of the defendant is a listed mitigator in the statute.

We hold that the State is correct on this mitigator. No reasonable person would rely on the age of the defendant in the way Judge Dowd did as a substantial and compelling reason to grant a departure from Jessica's Law in this case.

*Lack of criminal record.* The State concedes that this is a listed mitigating factor under Jessica's Law, but it nevertheless argues that it was insufficient on its own to constitute a substantial and compelling reason for Spencer's departure from Jessica's Law. It mentions, in particular, that Spencer's sexual abuse of his granddaughter had continued for years by the time the allegations came to light. Again, the defense makes little response, except to emphasize that the absence of a prior record is a statutory mitigator.

Despite the lack of a criminal record being a listed Jessica's Law mitigator, the State makes an accurate and sensible assessment of this factor. The only evidence before the court, which would not include the several family members who disbelieved Spencer's confession, was that Spencer had engaged in lewd fondling of his granddaughter for years. No reasonable person would regard the fact that he had never been caught and prosecuted before as a substantial and compelling reason to grant him a departure from Jessica's Law.

*Support of Family and Friends.* The State attempts to undercut the repeated praise of Spencer by (almost exclusively) family members by emphasizing that these persons also expressed disbelief in his guilt. The State takes the aggressive position that such disbelief would actually be harmful, making Spencer likely to reoffend while on probation. The defense response to this argument is to regurgitate those parts of support statements that do not assert Spencer's innocence.

Although we agree with the State that the protestations of Spencer's innocence have a tendency to weaken the support statements in the sentencing transcript and in the letters reviewed by Judge Dowd, as do repeated, desperate references to the need for someone to care for Spencer's wife, our abuse of discretion standard limits our exercise of skepticism. Even though the record makes clear that such support was not the uniform response of Spencer's family, including at least one of his young victims, we reluctantly concede that a reasonable person could decide that the support of family and friends was a substantial and compelling reason to grant Spencer's departure from Jessica's Law.

*Degree of Harm.* On this factor, the State argues that this should not be a permissible mitigator under Jessica's Law, given legislative testimony about the lifelong consequences from sexual victimization of children. (The State evidently fails to grasp that this is a legal argument, rather than an abuse of discretion argument.) It also argues that Judge Dowd failed to acknowledge anything beyond the great-granddaughter's mother's statement that no one talks about the crimes, while the record also included the other victim's personal statement that she still suffers from the trauma

caused by her grandfather's abuse. The defense brief overstates its record support, asserting that the parents of the victims, *i.e.*, plural, said that the victims were not hurt by Spencer's actions.

This factor again favors the State, even if one ignores its legal argument and concentrates only on its argument regarding Judge Dowd's incomplete review or comprehension of the victim impact statements under the forgiving abuse of discretion standard of review. No reasonable person would extrapolate from one victim's mother's lukewarm statement that the crimes are never discussed and thus her daughter is back to her old self to a "degree of harm . . . significantly less than typical for such an offense." K.S.A. 21-4716(c)(1)(E). There was a second victim, at a similar vulnerable age to the first victim, who had the misfortune of living with the defendant and therefore being handy for repeated molestation. Judge Dowd did not account for the harm done to her.

*Conclusion.* We have previously said that "[a]s long as one factor relied upon by the sentencing court is substantial and compelling, the departure sentence should be upheld," *State v. Blackmon*, 285 Kan. 719, 725, 176 P.3d 160 (2008), and that each mitigating factor standing alone need not be sufficient to justify a departure, if the reasons taken collectively constitute a substantial and compelling basis for departure, see *Blackmon*, 285 Kan. at 724-25; *State v. Minor*, 268 Kan. 292, 311, 997 P.2d 648 (2000). Here, the collective does nothing to strengthen the only individual factor of support of family and friends. Moreover, to the extent support of Spencer's family and friends can reasonably be characterized as a substantial and compelling reason to depart, the record on appeal demonstrates that it is far from an unalloyed good. A significant faction of Spencer's family, including the victim most affected by his crimes, wanted him in prison. Although an abuse of discretion standard is always difficult for any appellant to meet, Judge Dowd's overall performance at this sentencing was inadequate. He disregarded undisputed evidence. He failed to conduct an appropriate weighing of competing information. His belated, defense-scripted effort to improve upon his performance only served to emphasize its original deficiencies. We therefore hold, under the circumstances of this case, that Judge Dowd abused his discretion in

granting the departure from Jessica's Law. As a result, Spencer's sentences must be vacated and the case remanded for resentencing. A different judge will conduct the resentencing, as Judge Dowd is now retired.

*Existence of Substantial and Compelling Reasons for Dispositional Departure from Guidelines*

The dispositional departure from a guidelines prison sentence to probation would not have been possible had Judge Dowd not first granted the departure from Jessica's Law. Because we decide, as discussed below, that the new sentencing judge on remand may re-evaluate the evidence and decide anew whether to depart from Jessica's Law and dispositionally, we proceed to analysis of this issue because of the possibility it may arise again.

Before Judge Dowd, in view of its agreement to stand silent at sentencing, the State did not raise the argument that any mitigators supporting the dispositional departure were not substantial and compelling. Because Spencer does not object, we nevertheless reach the merits. Our analysis is again limited to the four mitigators mentioned initially by Judge Dowd; again, he did not differentiate between the mitigators that supported the departure from Jessica's Law and those that supported the dispositional departure.

The State's first argument is that nonstatutory mitigators should be reviewed with stricter scrutiny than statutory mitigators. The defense points out correctly that we no longer give analytical weight to such a distinction. See *State v. Martin*, 285 Kan. 735, 747, 175 P.3d 832 (2008). It does not appear, however, that *Martin* eradicated the customary corollary that nonstatutory factors must be consistent with the intent and purposes of the sentencing guidelines. See *State v. Tiffany*, 267 Kan. 495, 506, 986 P.2d 1064 (1999).

*Age of defendant.* On this issue, the State argues that only immaturity can be considered by a sentencing court, not maturity. It cites the Court of Appeals decisions in *State v. Haney*, 34 Kan. App. 2d 232, 241-42, 116 P.3d 747, *rev. denied* 280 Kan. 987 (2005), and *State v. Ussery*, 34 Kan. App. 2d 250, 258-59, 116 P.3d 735, *rev. denied* 280 Kan. 991 (2005). Both of these opinions, nearly word-for-word identical, involved adult male codefendants

who perpetrated sex crimes against an intoxicated 13-year-old girl in Lawrence. The defense argued that the age of these young adult codefendants should have exerted downward pressure on sentence length, because a juvenile male codefendant was punished less severely, despite his role as an instigator. This argument left the panel cold. See, *e.g.*, *Ussery*, 34 Kan. App. 2d at 257-58. Yet neither case stands for the proposition that advanced age can *never* be considered as a mitigating factor; indeed, they imply that any age can be a factor when it is demonstrated to have affected a defendant's judgment.

The defense brief has no response on this issue other than to state Spencer's age.

As on the departure from Jessica's Law, the State's argument on this factor is far more persuasive. There is no evidence in the record that Spencer's age of 76 had any negative effect on his judgment, which is the logical point of any age mitigator. No reasonable person would have relied upon Spencer's age without such evidence to support the dispositional departure.

*Lack of criminal record.* The State cites our opinion in *Murphy*, 270 Kan. at 807, for the proposition that a lack of criminal history, by itself, is not sufficient to justify a departure from a guideline sentence but can be considered "in the overall picture." This seems to be an argument attuned to an abuse of discretion standard of review. The State also cites the Court of Appeals opinion in *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 2, 901 P.2d 1 (1995), for the idea that a defendant's criminal history is (implicitly) never a proper departure factor, because the sentencing guidelines have already taken criminal history into account in setting presumptive sentence ranges. This is a legal argument appropriate for our de novo review.

The defense response to these arguments is virtually nonexistent.

We agree with the State that no reasonable person would have used Spencer's lack of a criminal record to support a dispositional departure from a guidelines sentence to probation. As noted above, the only evidence in the record is that his molestation of one of the victims was a longstanding practice; the fact that his crimes had never previously come to light is not a point in his favor. In this

case, we need not go the extra step to rule on whether the absence of criminal history is ever a proper mitigator to reduce a guidelines sentence.

*Support of Family and Friends.* The parties' arguments on this factor for the dispositional departure do not differ meaningfully from their arguments on this factor for the departure from Jessica's Law. Our response is therefore identical. Under an abuse of discretion standard, there is at least limited room to approve Judge Dowd's reliance on this factor as a substantial and compelling reason for the dispositional departure. However, the full record's exposure of the family divide over Spencer's conduct amply supports the opposite outcome.

*Degree of Harm.* The State expands beyond its previous Jessica's Law departure argument on this factor, and it brings our substantial competent evidence standard of review into play. The State asserts that this mitigator, despite its listing in K.S.A. 21-4716(c)(1)(E), was an improper basis for Judge Dowd's dispositional departure in this case, because there was no proof of how much harm would be typical for the type of offense and no showing of how the facts in the case made the harm less significant.

Again, the defense does not make a particularized counterargument.

In our opinion in *Minor*, 268 Kan. 292, Justice Edward Larson noted that nothing in the record showed that the degree of harm or loss attributed to the current crime was significantly less than what would be typical: "We have no statements or evidence as to what is 'typical for such an offense' and no showing as to how the facts in this case make the 'degree of harm or loss . . . significantly less.' To the extent this factor was relied upon by the trial court, it is specifically disapproved." *Minor*, 268 Kan. at 312. The Court of Appeals relied on *Minor* in the *Haney and Ussery* cases. See *Haney*, 34 Kan. App. 2d at 243; *Ussery*, 34 Kan. App. 2d at 260-61.

In the record on appeal before us, the only proof that the degree of harm caused by Spencer's offense could have been less than might ordinarily be expected is the victim impact statement from his granddaughter, speaking for her daughter, his great-granddaughter. It indicated that the great-granddaughter was back to

her old self, as no one talked about the crimes. This ultraslim reed cannot support the substantial competent evidence label that it must.

*Conclusion.* Our overall assessment of the four factors Judge Dowd originally articulated for the dispositional departure, whether considered individually or as a group, is the same as our assessment of the four factors when used as support for the departure from Jessica's Law. Under the circumstances before us, Judge Dowd abused his discretion in granting the dispositional departure.

### Extent of Departure

The last issue raised by the State questions the extent of the departure granted by Judge Dowd. We need not reach this issue, given our decision to vacate Spencer's sentences and remand.

### Permissible Actions on Remand

We must also discuss the appropriate scope of the new sentencing judge's authority on remand. This question appears to have been decided by *Blackmon,* although Blackmon was not a Jessica's Law case. See *Blackmon,* 285 Kan. at 730-32. Under that case, if a Jessica's Law sentence is vacated and a remand ordered for re-sentencing, the judge may re-evaluate the factors bearing on sentencing, including adding to them, and re-grant or deny a departure from Jessica's Law and a dispositional departure from the default guidelines sentence to probation, as well as a durational departure. This vacate-and-remand situation matches that before us in *Blackmon;* as discussed above, the situation in which Judge Dowd found himself between Spencer's sentencing and the hearing on the motion regarding the journal entry did not.

### Defense Challenge to Offense Severity Level

As mentioned above, the parties disagreed at sentencing about the appropriate sentencing guidelines nondrug grid box to which Judge Dowd should be permitted to depart from a Jessica's Law hard 25. The State took the position that the appropriate box was that for an offender with a criminal history of I and an offense severity level 1. The defense took the position that the appropriate

box was that for an offender with a criminal history of I and an offense severity level 3.

Although Spencer did not file a prophylactic cross-appeal of Judge Dowd's ruling in favor of the State on this point, and he has not filed a motion to correct an illegal sentence, he now seeks to have the issue decided in his favor by invoking K.S.A. 21-4721(e)(3), which reads: "In any appeal, the appellate court may review a claim that: . . . the sentencing court erred in ranking the crime severity level of the current crime . . . ." The State did not file a reply brief, and we thus have no response from it regarding the authority of the court to decide this issue.

In *Gracey*, 288 Kan. 252, 200 P.3d 1275 (2009), the appeal was the defendant's; he challenged the State's failure to allege his age of 18 or more in the complaint and the sentencing court's refusal to consider a dispositional departure after departing from a Jessica's Law hard 25. After deciding those issues, Justice Rosen then wrote: "[T]he State contends that the district court imposed a sentence lower than the guidelines sentence and that the imposition of such a sentence was illegal." He then observed that such an allegation raised a question of law over which an appellate court's review was unlimited, and quoted from K.S.A. 22-3504(1), which allows a court to correct an illegal sentence at any time. *Gracey*, 288 Kan. at 260-61.

*Gracey*'s structure and content thus implicitly permit a party that did not take an appeal or file a motion to correct illegal sentence to mount a challenge to a sentence's illegality during the other party's appeal. Consistent with *Gracey*, this court has authority to entertain Spencer's challenge to Judge Dowd's use of an offense severity level 1. This has a certain practical allure as well. A ruling on the merits of this issue will provide guidance on remand to the judge who replaces Judge Dowd.

Settlement of the parties' argument over which offense severity level governs an aggravated indecent liberties conviction after a departure from Jessica's Law requires statutory interpretation or construction, over which this court has de novo review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). The fundamental rule

"governing our interpretation is that 'the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

"Where a statute's language is subject to multiple interpretations, however, a reviewing court 'may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constuctions suggested. [Citation omitted.]' *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000). Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). We ascertain the legislature's intent behind a particular statutory provision 'from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see also *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). Thus, in cases that require statutory construction, 'courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.*' *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544, P.2d 791 (1975)." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754-55, 189 P.3d 494 (2008).

On the merits, the defense cites only to *Gracey*, asserting that it held a departure from the hard 25 sentence of Jessica's Law to a severity level 3 under the sentencing guidelines "not illegal." This is true; but the mirror image procedural posture of *Gracey, i.e.*, the State challenging the legality of a severity level 3 assignment on the defendant's appeal rather than the defense challenging the legality of a severity level 1 assignment on the State's appeal, means that *Gracey* does not directly control the outcome here. A holding that a severity level 3-based sentence is "not illegal" is not the same thing as a holding that a severity level 1-based sentence is illegal. Moreover, the *Gracey* parties' disagreement was limited to whether the sentencing judge had used the appropriate criminal

history classification, not the appropriate offense severity level, in choosing the applicable grid box under the guidelines. In other words, in *Gracey* we never were asked to examine or rule upon whether a departure from a hard 25 under Jessica's Law to a sentence "pursuant to the sentencing guidelines act" under K.S.A. 21-4643(d) necessarily meant a grid sentence and, if so, which offense severity level was appropriate for an aggravated indecent liberties conviction.

The same has been true in several other Jessica's Law cases, where mention has been made of a departure from Jessica's Law to a grid sentence or a particular severity level, but no appellate ruling on the propriety of that course of action has been sought or pronounced. See *State v. Stone*, 291 Kan. 13, 17, 237 P.3d 1229 (2010) (mentions district judge departed from Jessica's Law to 61 months); *State v. Oehlert*, 290 Kan. 189, 190-91, 224 P.3d 561 (2010) (mentions district judge departed from Jessica's Law to 60 months); *State v. Ballard*, 289 Kan. 1000, 1003, 218 P.3d 432 (2009) (district judge had granted joint recommendation from Jessica's Law to severity level 3); *State v. Seward*, 289 Kan. 715, 716, 217 P.3d 443 (2009) (mentions defendant sought departure from Jessica's Law to grid); *State v. Easterling*, 289 Kan. 470, 471, 213 P.3d 418 (2009) (suggestion that Jessica's Law departure would go to 118 months); *Gracey*, 288 Kan. at 254 (departure from Jessica's Law apparently to 3H before application of durational, dispositional departures); *State v. Thomas*, 288 Kan. 157, 158-59, 199 P.3d 1265 (2009) (departure from Jessica's Law would have led to 59 months under a severity level 3); *State v. Frost*, 2010 WL 1379112, at *2, unpublished opinion filed April 2, 2010 (S. Ct.) (defendant had received departure from Jessica's Law to 72 months).

Unfortunately, Jessica's Law and the sentencing guidelines act to which it refers a district judge when he or she departs from the hard 25 under K.S.A. 21-4643(d) are nothing if not ambiguous. Indeed, they set up an endless feedback loop with no plain or obvious resolution.

Taking the crime at issue in this case as an example, aggravated indecent liberties with a child is defined in K.S.A. 21-3504. Specifically, Spencer pleaded guilty to two charges under K.S.A. 21-

3504(a)(3)(A). K.S.A. 21-3504(c) states: "Except as provided further, aggravated indecent liberties with a child as described in subsection[] . . . (a)(3) is a severity level 3, person felony. . . . When the offender is 18 years of age or older, aggravated indecent liberties with a child as described in subsection (a)(3) is an off-grid person felony."

Jessica's Law, in K.S.A. 21-4643(a)(1)(C), makes Spencer's crime punishable by life with no possibility of parole for 25 years. But, once the district judge decides to depart from the mandatory minimum provision, Jessica's Law's departure provision, K.S.A. 21-4643(d), states that a "departure sentence shall be the sentence pursuant to the sentencing guidelines act, K.S.A. 21-4701 *et seq.* . . . and no sentence of a mandatory minimum term of imprisonment shall be imposed hereunder." The only "sentencing guidelines act" provision for aggravated indecent liberties and the other Jessica's Law crimes when the defendant is 18 or older and the victim is younger than 14 is K.S.A. 21-4706(d), which reads in pertinent part: "[S]uch violations are off-grid crimes for the purposes of sentencing. . . . [T]he sentence shall be imprisonment for life pursuant to K.S.A. 21-4643, and amendments thereto." The feedback loop for departures from Jessica's Law is thus complete: Jessica's Law sends the district judge to the sentencing guidelines act, which sends the district judge to Jessica's Law, which sends the district court to the sentencing guidelines act, and so on.

How should the loop be broken?

The legislative intent that a defendant in Spencer's shoes generally be punished with, and incapacitated by, a lengthy prison term seems clear. The legislative history on this point emphasizes this impression. See House J. 2006, p. 1323 (Speaker of the House, Michael O'Neal's explanation of vote: "I vote 'YES' on HB 2576. Between protecting the rights of those committing crimes against children and protecting children from heinous acts, I'll err in favor of protecting children EVERY time. I'll leave it to others to fret over whether we are being too tough. I make no apology. This is about protecting children. I hope the message we send to the sick criminal minds out there works, but if not and they break our laws, I want to know where they'll be the rest of their lives and if it's an

added prison bed, sign me up.") Yet the inclusion of a departure option to remove the mandatory minimum term is express. K.S.A. 21-4643. It is regrettable that similar drafting precision to define a Jessica's Law departure's effect on the underlying life sentence was not employed and that the legislative history is silent on the solution to the statutory circularity.

Florida was the first state to pass Jessica's Law, and Kansas looked to Florida when it passed Jessica's Law here. Forty-three states have passed some form of Jessica's Law, and of those states, nine have sentencing grid schemes similar to Kansas. But the interpretations of Jessica's Law-type statutes in our sister states also does not help us. The primary difference between Kansas and our sister states is that none of those states with a similar sentencing scheme to Kansas statutorily permit the trial court to depart from the mandatory minimum sentences. See Ark. Code Ann. § 5-14-103 (2009) (offender convicted of Jessica's Law-type offense sentenced to minimum 25-year term; no indeterminate sentences; no statutory reference to departure from mandatory sentence); Fla. Stat. §§ 794.011 (2010), 775.08 (2010), 921.0022 (2010) (mandatory 25-year minimum for dangerous sexual felony offenders, sexual battery of a child under the age of 12, and lewd or lascivious molestation of a child under the age of 12; statutory scheme assigns criminal severity ranking of 10 for Jessica's Law-type offenses; no statutory reference to departure from mandatory sentence); La. Rev. Stat. §§ 14:42, 14:43, 15-537(B) (2011) (mandatory life sentence or mandatory 20 years for Jessica's Law-type offenses with child under the age of 13 at hard labor without parole, probation, or suspension of sentence; no statutory reference to departure from mandatory sentence); Mich. Comp. Laws § 750.520b (2010) (mandatory 25-year term if victim under the age of 13 and offender is 17 years of age or older; assigns felony level of Class A; no statutory reference to departure from mandatory sentence); Minn. Stat. § 609.3455 (2010) (mandatory life sentence for egregious first-time and repeat offenders; guidelines presumptive sentence does not apply to offenders under § 609.3455; no statutory reference to departure from mandatory life sentence); S.C. Code Ann. § 16-3-655 (Law. Co-op 2010) (up to 30-year term for offender convicted

of criminal sexual conduct in first degree when offender is over 18 and victim is under 11 years of age; no statutory reference to departure from mandatory sentence); Tenn. Code Ann. §§ 39-13-522, 40-35-211 (2010) (rape of a child is a Class A felony; mandatory 25-year term; no indeterminate sentences; no statutory reference to departure from mandatory sentence); Wash. Rev. Code § 9.94A.507 (2011) (legislature limits court's authority to depart for Jessica's Law offenses; mandatory 25-year term or more).

In the absence of other guidance, we turn to subsequent legislative action, a canon of statutory construction, and the assumptions underlying our earlier Jessica's Law cases, remembering Justice Oliver Wendell Holmes' admonition that the life of the law is not logic, but experience.

The subsequent legislative action with some instructive power is the 2008 amendment to K.S.A. 21-4719, which governs departures from grid sentences. See K.S.A. 2008 Supp. 21-4719(a). It qualifies as "subsequent" in this case because Spencer's crimes of conviction were committed in 2007. Subsection (a) of that statute was altered, effective July 1, 2008, to include language limiting durational and dispositional departures in those Jessica's Law cases involving "crimes of extreme sexual violence," which includes rape, aggravated criminal sodomy, and aggravated indecent liberties perpetrated on children younger than 14. See K.S.A. 21-4716 (defining "crime of extreme sexual violence"). After amendment, 21-4719(a) reads in pertinent part: "The sentencing judge shall not impose a downward dispositional departure sentence for any crime of extreme sexual violence . . . . The sentencing judge shall not impose a downward durational departure sentence for any crime of extreme sexual violence, . . . to less than 50 percent of the center of the range of the sentence for such crime."

Because we presume that legislation happens for a reason and that amendments usually work a change in existing law, see *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006) (presumption against meaningless legislation), and *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464, 228 P.3d 403 (2010) (presumption that statutory amendment modifies prior law), it appears that the legislature believed

the statutory scheme as it existed before the 2008 amendment permitted both durational and dispositional departures in Jessica's Law cases. If this were not the case, it would not have taken the trouble in 2008 to disallow dispositional departures altogether and limit the extent of durational departures. In addition, because it placed the amendment in the sentencing guidelines act provision on departures from grid sentences, it also implied that the place to which a sentencing judge went when he or she departed from the mandatory minimum of Jessica's Law was not only a "sentence pursuant to the sentencing guidelines *act*," but a sentence pursuant to a sentencing guidelines *grid*. Finally, the limit it enacted for durational departures plainly clearly uses the grid as a starting place, keying the maximum reduction in prison time to 50 percent of the middle number in the assigned grid box. We deduce from all of these after-acquired clues that the legislature always intended a sentencing judge who departed from the mandatory minimum of Jessica's Law under K.S.A. 21-4643(d) to go to the applicable grid box to determine the departure sentence.

The statutory canon of construction known as the rule of lenity compels the answer to the next question: What is the applicable grid box?

As referenced above, both the definitional statutes for Jessica's Law crimes—see K.S.A. 21-3447 (aggravated trafficking); K.S.A. 21-3502 (rape); K.S.A. 21-3504(a)(3) (aggravated indecent liberties); K.S.A. 21-3506(a)(1) and (a)(2) (aggravated criminal sodomy); K.S.A. 21-3513 (promoting prostitution); K.S.A. 21-3516(a)(5) and (a)(6) (sexual exploitation)—and K.S.A. 21-4706(d), for sentencing of such crimes, identify them as off-grid crimes. And a defendant convicted of a Jessica's Law crime who receives a departure from the mandatory minimum under K.S.A. 21-4643, remains convicted of an off-grid offense. See *Ballard*, 289 Kan. at 1012. Nevertheless, if the appropriate sentence for a defendant who receives a Jessica's Law departure must be found not only in the sentencing guidelines act but on a sentencing guidelines grid, the defendant must have an offense severity level assigned to the crime of conviction. See K.S.A. 21-4704(d) (grid box determined by intersection of offense

severity level rating for the current crime and criminal history score).

The State, as it did in this case, has been known to argue that every Jessica's Law case not sentenced to the mandatory minimum cannot go below a severity level 1 once it moves to the sentencing guidelines grid. The defense bar, on the other hand, has argued that every Jessica's Law case not sentenced to the mandatory minimum must be sentenced dependent on the severity level assigned to the crime when it lacks the element of disparity between the defendant's and the victim's ages, *i.e.*, defendant 18 or older and victim younger than 14.

There is precious little statutory language to vindicate either position, so we fall back on the rule of lenity, see *Horn*, 288 Kan. at 693-94 (invoking rule of lenity to assign severity level to attempt of Jessica's Law offense), and accept the defense argument. A sentencing judge who departs from the mandatory minimum of Jessica's Law should look to the severity level assigned to the crime when it lacks the element of disparity between the defendant's and the victim's ages. In other words, the offense severity level for a violation of K.S.A. 21-3447 (aggravated trafficking), K.S.A. 21-3502 (rape), and K.S.A. 21-3504(a)(1) and (a)(2) (aggravated criminal sodomy) is 1; for a violation of K.S.A. 21-3504(a)(3)(A) (aggravated indecent liberties) is 3; for a violation of K.S.A. 21-3513 (promoting prostitution) is 6; and for a violation of K.S.A. 21-3516(a)(5) and (a)(6) (sexual exploitation of a child) is 5.

Finally, experience. The holdings set forth above appear to be consistent with the patterns adopted by various district court judges in the Jessica's Law cases that have so far reached this court. See, *e.g.*, *Ballard*, 289 Kan. at 1003; *Gracey*, 288 Kan. at 253; *Thomas*, 288 Kan. at 159. When departing from the mandatory minimum under K.S.A. 21-4643(d), these judges have gone to the grid at the severity level dictated by the crime-defining statute less the element of the defendant's and victim's age disparity. This is a situation, perhaps emblematic of common-law development as a whole, in which all of us are learning by doing. Certainly, if the legislature believes we have misconstrued its intention, it will waste no time in letting us know.

We pause to make a closing point, an explicit correction of the label this court has previously used for departures from the mandatory minimum of Jessica's Law. Although several of our cases have referred to such a departure as a "durational departure" or a "downward departure" or a "downward durational departure"— see *State v. Huerta-Alvarez*, 291 Kan. 247, 251-52, 243 P.3d 326 (2010) ("downward departure" from Jessica's Law sought); *State v. Garza*, 290 Kan. 1021, 1023, 236 P.3d 501 (2010) (downward departure); *State v. Gomez*, 290 Kan. 858, 861, 235 P.3d 1203 (2010) ("durational departure" denied by district judge); *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010) (two-step process for considering "downward durational departure"); *State v. Reyna*, 290 Kan. 666, 689-90, 234 P.3d 761 (2010) (no abuse of discretion in denying motion seeking "durational departure"); *State v. Trevino*, 290 Kan. 317, 318, 227 P.3d 951 (2010) (State agreed to recommend "durational departure"); *State v. Oehlert*, 290 Kan. 189, 190-91, 224 P.3d 561 (2010) (district judge granted defendant's downward "durational departure"); *State v. Marler*, 290 Kan. 119, 127, 223 P.3d 804 (2010) (no abuse of discretion to deny downward "durational departure"); *State v. Robison*, 290 Kan. 51, 56-57, 222 P.3d 500 (2010) (same); *State v. Mondragon*, 289 Kan. 1158, 1162, 220 P.3d 369 (2010) (same); *Ballard*, 289 Kan. 1006 (jurisdiction to review "downward durational departure"); *State v. Seward*, 289 Kan. 715, 721-22, 217 P.3d 443 (2009) (no abuse of discretion to deny "downward durational departure"); *State v. Gonzalez*, 289 Kan. 351, 356, 212 P.3d 215 (2009) (defendant sought downward durational departure); *State v. Spotts*, 288 Kan. 650, 655-56, 206 P.3d 510 (2009) (no abuse of discretion to deny downward durational departure); *Gracey*, 288 Kan. at 254 ("downward durational departure" from low-end presumptive sentencing range for severity level 3, criminal history H nondrug felony); *State v. Thomas*, 288 Kan. 157, 164, 199 P.3d 1256 (2009) (no abuse of discretion to deny motion for "downward durational departure"); *State v. Ortega-Cadelan*, 287 Kan. 157, 164-66, 194 P.3d 1195 (2008) (defense argument for "downward durational departure" rejected); *State v. Frost*, 2010 WL 1379112, at *2 unpublished opinion filed April 2, 2010 (S. Ct.) (defendant received "downward

durational departure"); *State v. Gilliland*, 2010 WL 1379182, at *1 unpublished opinion filed April 2, 2010 (S. Ct.) (motion for "downward durational departure" denied)—these actually are confusing misnomers.

The sentence under Jessica's Law is life imprisonment. It is true that a departure to the grid for a determinate sentence displays at least numerical indicia of release from prison before either the expiration of the defendant's natural life or the Parole Board's dispensation of grace. Yet it is best to refrain from calling a departure from the mandatory minimum of Jessica's Law to the sentencing guidelines grid a "durational departure" or a "downward departure" or, the alliterative trifecta, a "downward durational departure." These terms are best reserved for the last of the three types of departures available from a Jessica's Law sentence, the one Judge Dowd did not try to grant Spencer, *i.e.*, a departure from the grid box sentence dictated by the intersection of severity level and criminal history to a shorter determinate prison sentence. See *Gracey*, 288 Kan. at 253 (after departure from mandatory 25 years to 3H, durational departure to 3I range; then dispositional departure considered); see also *Ballard*, 289 Kan. at 1008-09 (once sentenced on grid, judge free to depart). That option, like the two departures granted by Judge Dowd, also will be in play on remand in this case.

## CONCLUSION

In view of all of the foregoing discussion, under the version of Jessica's Law in effect before amendment in 2008, a sentencing judge need not differentiate between the mitigators that constitute substantial and compelling reasons for a departure from the mandatory minimum of Jessica's Law and those that support an additional dispositional departure from the default prison sentence pursuant to the sentencing guidelines act. On the record before us in this case, the district judge abused his discretion in granting the defendant a departure from the hard 25 of Jessica's Law. He also abused his discretion in granting the defendant a dispositional departure from the sentencing grid. We therefore vacate Spencer's sentences and remand for resentencing. Given the sentencing

judge's intervening retirement, the district judge who replaces him on remand may re-evaluate the factors bearing on Spencer's sentencing, including adding to them, and re-grant or deny a departure from Jessica's Law and impose a durational and/or dispositional departure. The appropriate grid sentence for an off-grid Jessica's Law crime, once a judge has decided to depart from the mandatory minimum of Jessica's Law, is that dictated by the severity level assigned to the crime when it lacks the element of disparity between the defendant's and the victim's ages.

Sentences vacated and case remanded for resentencing.